**BROTHERHOOD OF PAINTERS, DECORATORS, AND PAPERHANGERS OF AMERICA, AFL–CIO, an unincorporated International Labor Organization, Plaintiff,**

v.

**BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, AFL–CIO, LOCAL UNION 127, Oakland, California, an unincorporated Labor Organization et al., Defendants.**

No. 45937.

United States District Court
N. D. California.

Nov. 30, 1966.

John J. Dunn, Oakland, Cal., of Brundage & Hackler, Los Angeles, Cal., for plaintiff.

Francis J. McTernan, of Garry, Dreyfus & McTernan, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

Plaintiff, Brotherhood of Painters, Decorators and Paperhangers of America, AFL-CIO (hereinafter referred to as the International), seeks a preliminary injunction to make effective a trusteeship imposed on three of its local unions on October 5, 1966, under the provisions of Section 47 of its International Constitution.

The trusteeships were imposed upon the ground that the defendants (local unions 127 (Oakland), 560 (San Pablo) and 1178 (Hayward)), were delinquent in payment of a certain special per capita tax voted by District Council No. 16 under the provisions of Article VI, Sec. 6 (d) of the District Council's By-laws.

Defendants oppose the application for preliminary injunction on the grounds: (1) that this Court does not have jurisdiction of the subject matter; (2) that the purported trusteeships are illegal by reason of the trusteeship provisions of the Labor-Management Reporting and Disclosure Act (Landrum-Griffin Act), 73 Stat. 530–532 (1959) 29 U.S.C.A. §§ 461–466 (1964); (3) that plaintiff is not entitled to preliminary injunctive relief, and (4) that District Council No. 16 is an indispensable party to this action.

It appears from the record herein that prior to July 1, 1966, the dues payable to the locals by their members were to be not less than $8.85 per month (District Council By-laws, Art. VI, Sec. 6(a).

It also appears from the record that the defendant locals were required to pay to the District Council a general per capita tax of 20 cents per member per month (District Council By-laws, Art. VI, Sec. 4) and an additional special per capita tax of $3.25 per member per month for the Business Representative's Salary and Expense Fund (District Council By-laws, Art. VI, Sec. 5).

Article VI, Sec. 6(d) of the District Council By-laws, adopted May 9, 1956, provided that regular monthly dues for members of local unions shall be increased under a fixed formula whenever the members receive a wage increase and that District Council No. 16 shall determine what portion of any dues increase would remain with the locals and what portion would go to the District Council unless the District Council waives all or part of a dues raise.

Having in mind that a wage increase for members of the locals would take effect on July 1, 1965, with a resultant automatic dues increase one year later from $8.85 per month to $10.60 per month, District Council No. 16, by action taken in January and April, 1966, applying its By-laws, Art. VI, Sec. 6(d), purported to allocate from the resulting $1.75 dues increase the sum of 85 cents to the locals and the sum of 90 cents to the District Council, this latter portion to be in the form of an increase in the special per capita tax for the Business Representative's Salary and Expense Fund from $3.25 to $4.15, effective July 1, 1966.

The defendant local unions indicated that they would not recognize either their $1.75 members' dues increase or the 90 cent increase in the special per capita tax from the local to the District Council contending, among other things, that the District Council had theretofore misused the Business Representative Expense and Salary Fund by diverting it to other purposes and that the dues increase violated Section 101 of the Labor-Management Reporting and Disclosure Act, 73 Stat. 522 (1959), 29 U.S.C. § 411 (1964). The defendant locals also commenced a movement to bring about disaffiliation from District Council 16 with a view to the creation of a single Bay Area District Council.

In March 1966, the defendant locals ceased payment of their general and special per capita taxes to District Council 16, but in July 1966, they paid such taxes through May, 1966. Section 3 of the District Council's By-laws

permits locals to be up to three months late in per capita taxes without penalty.

In May 1966, two of the defendant locals voted to disaffiliate with District Council No. 16 and later (in November, 1966) the third defendant local voted to diaffiliate.

Meanwhile, on April 15, 1966, Dow Wilson, Secretary of Local Union No. 4, San Francisco, was murdered and shortly thereafter on May 7, 1966, Lloyd Green, Secretary of defendant local Union 1178, was murdered.

In June, 1966, defendant locals and certain members thereof, commenced actions in this Court (Civil Nos. 45283 and 45294) to enjoin District Council No. 16 from requiring the members of the locals to pay dues in excess of $8.85 per month and from requiring the locals to pay a special per capita tax to the District Council in excess of $3.25 per month. Preliminary injunction was denied but these cases are still pending.

In August, 1966, the defendant locals tendered to District Council No. 16 all general per capita taxes (20 cents per member per month) due through July, 1966 and all of the special per capita taxes ($3.25 per member per month) through June, 1966. The checks, however, were returned by the District Council.

Later, in October, the defendant locals made a further tender of all general per capita taxes due to that date and all special per capita taxes then due at the old rate of $3.25 per month without prejudice, however, to the claim of District Council No. 16 that an additional 90 cents had become due on this special per capita tax since July 1, 1966. That tender was refused but it was renewed by defendant locals at the hearing on this pending application.

These tenders, if accepted by District Council No. 16 or by plaintiff herein, would have amounted to about 82% of the delinquency claimed at the date of the tenders.

In June, 1966, the Executive Board of plaintiff International directed the defendant locals to pay up their obligations to the District Council. Thereafter, on June 27, 1966, the President of plaintiff International advised the locals that their failure to pay violated the various sections of the International Constitution and of the By-laws of the District Council and ordered hearings set for July 18, 19, 20, to determine whether trusteeships should be imposed. These hearings were postponed pending an opportunity for the locals to be heard at the meeting of the General Executive Board at Toronto, Canada, on August 24, 1966. The local unions did not appear for that hearing. Counsel for defendants states that the reason said local union officials did not appear at the Toronto hearing was a warning from the police that Ben Rasnick, Secretary-Treasurer of District Council 16, was mixed up with the murders of Dow Wilson and Lloyd Green and that they did not feel it would be safe to be in a strange city with him and possibly other individuals mixed up with the aforesaid murders. Shortly thereafter, Ben Rasnick was arrested and charged with conspiracy to commit the murders above mentioned.

Thereafter, on October 5, 1966, the President of plaintiff International, acting under Section 47 of its Constitution, imposed the trusteeships here in question.

### JURISDICTION

Plaintiffs invoke jurisdiction under Section 301 of the Labor Management Relations Act, 1947 (Taft-Hartley Act) 61 Stat. 156, 29 U.S.C. § 185(a), which provides that the United States District Court has jurisdiction of suits for violation of contracts between labor organizations.

In Parks v. International Bhd. of Electrical Workers, 314 F.2d 886 (4th Cir. 1963), a suit brought by a local union against its International to compel restoration of its revoked charter, the Court held that such a suit is between labor organizations for breach of the interunion contract within the meaning of 29 U.S.C. § 185(a).

Defendants contend, however, that 29 U.S.C. § 185(a) has been limited by the

trusteeship provisions of the Labor-Management Reporting and Disclosure Act (Landrum-Griffin Act), 73 Stat. 530–532 (1959), 29 U.S.C. §§ 461–466 (1964). 29 U.S.C. § 462 provides that trusteeships can be established and administered only in accordance with the Constitution and By-laws of the organization which has assumed trusteeship over the subordinate body *and* for the purpose of correcting corruption or financial malpractice, assuring the performance of collecting bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 464(a) provides certain remedies for a labor organization's violation of 29 U.S.C. §§ 462–466, i.e., (1) written complaint by any member or subordinate body of a labor organization to the Secretary of Labor, investigation by him and, upon probable cause to believe that such violation has occurred and has not been remedied, a civil action by the Secretary of Labor in any District Court of the United States for such relief (including injunction) as may be appropriate, (2) a civil action by a member or subordinate body of a labor organization in the District Court for the same kind of relief. 29 U.S.C. § 464(c) further provides that a trusteeship established by a labor organization in conformity with the procedural requirements of its Constitution and By-laws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its Constitution and By-laws, shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under 29 U.S.C. § 462.

Defendants argue that the effect of these provisions is to limit the remedies of labor unions concerning trusteeships to those stated by 29 U.S.C. § 462, i.e., (1) complaint by a member or subordinate union to the Secretary of Labor, investigation by the Secretary and possible civil action by him, or (2) civil action in the District Court by a member or subordinate union maintainable, as held in Parks v. International Bhd. of Electrical Workers, supra at 923–924, at least until the Secretary of Labor commences action under the statute.

In other words, defendants contend that these remedies given to members and subordinate unions for the purpose of contesting a trusteeship imposed by an international impliedly exclude any judicial remedy in the District Court by an International under 29 U.S.C. § 185(a) in aid of a trusteeship established under the contractual provisions of the Constitution and By-laws.

In Parks v. International Bhd. of Electrical Workers, supra, at 917, the Court of Appeals reversed a District Court's order for restoration of a local's charter saying that, although the Court had jurisdiction under 29 U.S.C. § 185 (a), this jurisdiction should not be expanded into a carte blanche for unrestrained inventiveness in the areas of union structure but that the jurisdiction should be basically restricted to the effectuation of existing congressional policy.

It has been held, Ducos v. Maldonado, 207 F.Supp. 271 (D.P.R.1962), that a suit brought under 29 U.S.C. §§ 185(a) and 464(a) by an International's trustee against a local union should be dismissed for lack of jurisdiction because (1) action by the trustee against the local was not a suit between labor organizations within the meaning of 29 U.S.C. § 185(a) and (2) 29 U.S.C. § 464, dealing with trusteeships, limits private action to a subordinate body or member thereof.

■ In the opinion of this Court, however, there is no such repugnancy between 29 U.S.C. § 185(a) and 29 U.S.C. §§ 462–464 as requires a holding that the right which an international would have under 29 U.S.C. § 185(a) to bring an action in the District Court against a

subordinate local for breach of contract, has been impliedly abolished by 29 U.S.C. §§ 462–464 in situations involving trusteeships imposed pursuant to contractual arrangements between an international and one of its locals.

The Labor-Management Reporting and Disclosure Act neither abolishes nor condemns trusteeships. On the contrary, these sections recognize that provision may be made in the Constitution of a labor organization for the imposition of trusteeships to deal with the kind of abuses set forth in 29 U.S.C. § 462 and, further, that a trusteeship imposed pursuant to the Constitution of an International will be presumed to be valid and subject to attack only upon a showing by a subordinate body or its members, that it was not imposed in good faith for the purposes stated in 29 U.S.C. § 462.

29 U.S.C. § 464(a) merely provides the procedures by which the subordinate body, or its members, may seek to meet the burden of such an attack. These procedures will not be impaired by recognizing the right given to an international under 29 U.S.C. § 185(a) to sue its subordinate local in the District Court for breach of contractual arrangements concerning trusteeship.

To hold otherwise would mean that a trusteeship, validly imposed by an international to deal with the kind of abuses stated in 29 U.S.C. § 462, could not, in fact, be enforced against an uncooperative local. Accordingly, a local union, could successfully thwart the imposition of a trusteeship by the simple device of defiance, rather than having to resort to the procedures spelled out in 29 U.S.C. § 464.

Without jurisdiction to enforce a trusteeship, the entire scheme of the trusteeship provisions of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 462–466 could be set at naught.

For the foregoing reasons, this Court finds that it has jurisdiction of the subject matter of this suit under 29 U.S.C. § 185(a).

## VALIDITY OF THE TRUSTEESHIP

It does not follow, however, that plaintiff is entitled to a preliminary injunction in this case.

The record shows, and the Court finds that these trusteeships, although imposed in accordance with the Constitution and By-laws of the International, were not imposed for any of the purposes specified by 29 U.S.C. § 462.

It is conceded by plaintiff that the trusteeships were not imposed for the purpose of correcting corruption or financial malpractice of these local unions. There is no substantial evidence of a purpose to assure the performance of collective bargaining agreements or other duties of a bargaining representative— except the inference, argued by plaintiff, that nonpayment of the special per capita tax to the District Council might impair the ability of the District Council to pay the salaries of its business representatives, who oversee the performance of the collective bargaining agreements. There is no substantial evidence herein of a purpose to restore democratic procedures.

The evidence is to the effect that the trusteeships were imposed for the purpose of compelling these local unions to accede to an increase in members' dues from $8.85 per month to $10.60 per month and a resulting increase in the special per capita tax to the District Council from $3.25 per month per member to $4.15— increases which the local unions have challenged as violations of Title 29 U.S.C. § 411.

The evidence is substantially to the effect that the only purpose of the trusteeship is to compel these local unions to pay a 90 cent increase in the special per capita tax voted by the District Council in connection with a claimed automatic dues increase of $1.75.

Although a special per capita tax of $3.25 from the local to District Council (established by the District Council By-laws Art. VI, Sec. 5) is to be distinguished from the dues payable by members as described in 29 U.S.C. § 411—(See United

Bhd. of Carpenters, etc. v. Brown, 343 F.2d 872, 886 (10th Cir. 1965)—the distinction is not significant here. In this connection it must be noted that the District Council did not simply vote to raise the special per capita tax established by its By-laws, Art. VI, Sec. 5. Such an increase would have required an amendment to the By-laws. In this case the District Council acted, not under Art. VI, Sec. 5, but under the allocation provisions of the automatic dues increase rule, Art. VI, § 6(d).

The 90 cents per capita tax increase to the District Council was accomplished by the device of allocating that amount of the automatic $1.75 dues increase to the District council and, except for the automatic dues increase, there would have been nothing from which to make that allocation.

The legality of this dues increase and the resulting special per capita tax increase is challenged upon the ground that they violate the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411 and, further, that they violate the International's Constitution and the District Council's By-laws.

29 U.S.C. § 411(a)(3) provides in effect that the rates of dues payable by members of any labor organization in effect on September 14, 1959, shall not be increased, and no general or special assessment shall be levied upon such members except upon the procedures prescribed by 29 U.S.C. § 411(a)(3)(A)(B) —procedures obviously designed to assure a maximum of democratic participation in matters of dues increase.

Plaintiff, conceding that these procedures were not followed in voting the 1966 dues and special assessment increases, contends that the procedure was not necessary because Art. VI, Sec. 6(d) of the By-laws of the District Council, enacted in 1956 before the enactment of 29 U.S.C. § 411 made provision for an *automatic* dues increase upon every wage increase.

It is not necessary to finally determine at this time the legality of the action taken to increase dues and thereupon increase the special per capita tax. As already noted actions are still pending in this Court on that issue.

The question presented in the instant suit is whether a trusteeship imposed by an International upon its locals on the ground that they are delinquent in per capita taxes—the legality of which is challenged by the locals under federal law and under the labor organization's own Constitution and By-laws—and which challenge this Court finds to be in good faith—can be said to be imposed for the legitimate objects of the organization within the meaning of 29 U.S.C. § 462.

In United Bhd. of Carpenters, etc. v. Brown, supra, a suit brought by local union members against an international to compel dissolution of a trusteeship upon the ground, among others, that the trusteeship had been imposed for purposes outside those permitted by 29 U.S.C. § 462, the Court held at 883 that imposition of a trusteeship for the reason that the local would not affiliate with a District Council and would not raise its dues was not within the categories set forth in 29 U.S.C. § 462, pointing out that the local membership had consistently voted against the affiliation and the dues increase, that the provisions of 29 U.S.C. § 411 were designed to afford protection to members in that respect and, further, that to hold that the asserted purposes were proper would place the Court in the position of allowing a national union to establish trusteeship over a local union because the members insisted upon exercising a right granted them by statute.

It is true that the holding of this case was coupled with a holding that the Constitution and By-laws did not make adequate provision for trusteeship and that therefore, the presumption of validity of the trusteeship did not arise. Since plaintiffs in the instant case do not dispute that the trusteeship was imposed in accordance with the Constitution and By-laws of the plaintiff International, the presumption would arise only if this civil action by the International can be considered as "a proceeding pursuant to this

action" (i. e., 29 U.S.C. § 464). Obviously, this action is not brought pursuant to 29 U.S.C. § 464 because that section makes no provision for a civil action by an international as distinguished from actions by members or by a subordinate body. This action is brought only under the broad provisions of 29 U.S.C. § 185(a).

In any event, this Court concludes that, even if such presumption were held to exist in this action, the evidentiary record is such as to rebut any such presumption and to require a finding that the instant trusteeships were not established in good faith for a purpose allowable under 29 U.S.C. § 462.

## IRREPARABLE INJURY

Finally, in an application for a preliminary injunction the applicant bears the burden of establishing a right to such injunctive relief and that irreparable injury will result to him if it is not granted. Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, 268 F.2d 569, 574 (3d Cir. 1959).

As previously stated, the evidence shows that the reason for the plaintiff International's imposition of the instant trusteeships was to compel defendant locals to accede to the $1.75 increase in the members' dues and the resulting 90 cents increase in the special per capita tax to the District Council from the locals. The plaintiff contends that payment is necessary to enable the District Council to pay the salaries of its business representatives, who it claims, oversee the performance of the collective bargaining agreements.

However, on several occasions, defendant locals have tendered to the District Council, all outstanding indebtedness except the disputed 90 cents special per capita tax increase claimed to be payable since July 1, 1966. These tenders, amounting to approximately 82% of the amount claimed by the District Council, have been made without prejudice to the District Council's claim to the 90 cents special per capita tax increase. Plaintiff has offered no reason in these proceedings for the District Council's refusal to accept such tenders. It thus appears that inability of the District Council to meet the salary obligations of its business representatives is in large part due to its own making.

Accordingly, the Court finds that no irreparable injury will result from the denial of the plaintiff's application for a preliminary injunction.

For the reasons set forth herein, it is the order of the Court that plaintiff's application for a preliminary injunction should be and hereby is denied.

This Memorandum of Decision shall serve as the Findings of Fact and Conclusions of Law as required by Fed.R. Civ.P. 52 unless within five (5) days from the date of this decision either party shall file with the Court and serve upon opposing counsel any supplementary findings which it feels is material herein.