Edward LYNN, Plaintiff-Appellant,

v.

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION and Local No. 75 of the Sheet Metal Workers' International Association, Defendants-Appellees.

No. 84–6447.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1985.

Decided Nov. 26, 1986.

Bruce M. Stark, Long Beach, Cal., for plaintiff-appellant.

Julius Reich, Reich, Adell, Crost, Los Angeles, Cal., Donald W. Fisher, Toledo, Cal., for defendants-appellees.

Before BROWNING, KENNEDY, and HUG, Circuit Judges.

HUG, Circuit Judge:

Lynn filed suit against the Sheet Metal Workers' International Association ("International") claiming that his removal from his position as business representative violated his free speech rights under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401–531 (1982). He also sued both the International and Local 75 of the Sheet Metal Workers' International Association ("Local" or "Local 75") for an alleged failure to refer him to work as required by the collective bargaining agreement. The district court granted summary judgment for the International on the job removal claim and also for Local 75 on the work referral claim; it dismissed the work referral claim against the International for failure to prosecute. Lynn now appeals the district court's actions. We reverse in part and affirm in part.

## FACTS

In June, 1981, plaintiff-appellant Edward Lynn was elected business representative of Local 75. Over the next year, Lynn and other members became increasingly critical of expenditures by the Local's officers and organized a dissident group, which successfully campaigned to defeat proposals to raise the Local's dues. In June, 1982, Local officers, including Lynn, wrote to International's president and asked him to take whatever action he deemed necessary, including trusteeship, to put the Local "on a sound financial basis." On June 22, the International president placed Local 75 under trusteeship pursuant to Article 3, Section 2(c) of the International's Constitution and Ritual ("constitution") and named Regional Director Richard Hawkins as trustee.

Hawkins proceeded to propose another dues increase. At a special meeting of the membership on July 24, Lynn spoke in opposition to the proposal, which was defeated. On July 29, Hawkins, citing his power as trustee, notified Lynn that he was removed from his position as business representative because of his opposition to the dues increase. In addition, on August 9, Hawkins filed charges with the union against Lynn, claiming, *inter alia*, that Lynn had acted contrary to the recommendations of the Executive Board, and that he had argued against the dues increase "in a belligerant manner." While Lynn did not receive a hearing on his removal from office *per se*, he appealed Hawkins's action through the three-step process set forth in the International's constitution. He also received a union trial on the Hawkins charges and was fined $2,500.

Following his removal from office, Lynn registered at the Local's hiring hall, which was created under the terms of a collective bargaining agreement with sheet metal industry employers. Because of his seniority, Lynn was placed on the "A" list and was entitled to be referred to work before non-"A" list members. Lynn alleges that non-"A" list members were referred to work instead of him. Lynn further alleges that when he attempted to file a grievance on this issue with Hawkins, he was told to file it with the Local's business representative; yet, when he attempted to file a grievance with the business representative, he was told to file it with Hawkins as trustee. Thus, no grievance was filed.

On November 3, 1983, Lynn filed a complaint in district court against the International and the Local. His first cause of action, against the International, claimed that his removal from the office of business representative violated sections 101, 102, and 609 of the LMRDA, 29 U.S.C. §§ 411–412, 529, because it infringed upon his free speech rights.[1] His second cause

1. Section 101, 29 U.S.C. § 411, provides in part:
 (a)(1) **Equal rights.** Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend

of action, against both the International and the Local, alleged that the Local's failure to refer him to work was a violation of the collective bargaining agreement and, thus, a violation of section 301, 29 U.S.C. § 185 (1982). Both the International and the Local filed timely answers; the Local also filed a counterclaim to collect the fines levied against Lynn as a result of Hawkins's charges. In March, 1984, the International filed a motion for partial summary judgment on the first cause of action, the removal from office; Lynn filed a cross-motion for partial summary judgment on the same issue. At the same time, the Local filed a motion for summary judgment on the second cause of action, the "failure to refer" issue, on the basis that Lynn had failed to exhaust internal union remedies; Lynn filed an opposition to this motion, but did not file a cross-motion for summary judgment.

On April 2, 1984, the district court heard the motions, and granted summary judgment for the International on the first cause of action. Two days later, it granted summary judgment for the Local on the second cause of action. Although this left both the complaint against the International on the second cause of action and the Local's counterclaim unresolved, all of the parties agreed that since the International was running the Local through its trustee, Hawkins, a final judgment on all issues had in fact been rendered. On May 4, Lynn appealed. After both parties had briefed the finality issue, this court held on August

8 that we lacked jurisdiction because there had been no final judgment on either the second cause of action *vis-a-vis* the International's or the Local's counterclaim. Our order was filed and served on August 24 and September 10, respectively.

This shifted the case back to the trial court, where a pretrial conference had previously been scheduled for August 27. Since all parties believed that the case was properly on appeal, they had not prepared for the conference, and did not appear. On August 27, the court dismissed Lynn's action and the Local's counterclaim for failure to prosecute and for failure to comply with Local Rule 9, which governs pretrial conferences, but stayed the order and continued the conference until September 24. On September 10, Local 75 filed a notice of nonopposition to the dismissal of its counterclaim. Thus, with summary judgment having been granted for the International on the first cause of action and for the Local on the second cause of action, and with the union's acquiescence in the dismissal of its counterclaim, the only viable claim at this point was Lynn's second cause of action, the alleged failure to refer him for work, against the International. Lynn's counsel, who had been out of the country from August 8 to September 10, confirmed this with the court clerk shortly after his return.

During the course of this litigation, Lynn had filed charges with the National Labor Relations Board ("NLRB") about the "fail-

membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) **Freedom of speech and assembly.** Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: **Provided,** That nothing herein shall be construed to impair the right of a labor organization to

adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Section 102, 29 U.S.C. § 412, states that:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

ure to refer" claim and the NLRB had scheduled hearings on the matter for early October. Lynn and his counsel were under the impression that the NLRB was proceeding against both the International and the Local. Thus they decided on September 17 not to contest the dismissal of Lynn's second cause of action against the International, reasoning that the NLRB would handle the substantive aspects of Lynn's complaint and that the dismissal by the trial court would allow Lynn to appeal his first cause of action, because a final judgment on the entire complaint would have been rendered. On September 19, however, Lynn and his counsel discovered that the NLRB was proceeding only against the Local and not against the International; thus, contesting the dismissal suddenly became important. However, Lynn and his counsel had not taken steps to prepare this issue for the pretrial conference and, when the conference was held on September 24, asked for another continuance. The court denied the request, and the order dismissing Lynn's complaint became effective. Lynn appeals the grants of summary judgment and the dismissal.[2]

## STANDARD OF REVIEW

■ Normally, a grant of summary judgment is reviewed *de novo*. *Nevada v. United States*, 731 F.2d 633, 635 (9th Cir. 1984); *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). An appellate court's review is governed by the same standard used by a trial court under Federal Rule of Civil Procedure 56(c). *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328 (9th Cir.1983); *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983). The reviewing court must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Prestin v. Mobil Oil Corp.*, 741 F.2d 268, 269 (9th Cir.1984); *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984). Thus, we will apply the *de novo* standard in reviewing the trial court's actions on Lynn's first cause of action, removal from his position as business representative.

Lynn's second cause of action against the Local involves both procedural and substantive issues. We will apply the *de novo* standard to the procedural issues. However, in considering Lynn's substantive claims, we will follow *Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed. 538, 548 (1981), where the Court held that a trial court has discretion in deciding whether exhaustion of internal union remedies should be required before the court would hear the case. *See also Scoggins v. Boeing Co.*, 742 F.2d 1225, 1229–30 (9th Cir.1984).

With regard to Lynn's third claim, that the trial court should not have dismissed his second cause of action against the International for lack of prosecution, trial courts may exercise their discretion in this area. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 633, 82 S.Ct. 1386, 1388–89, 1390, 8 L.Ed.2d 734 (1962); *Franklin v. Murphy*, 745 F.2d 1221, 1232 (9th Cir.1984). Thus, we will review the district court's actions here for an abuse of discretion.

## I.

### First Cause of Action Against the International

Lynn alleges that his removal of his position as business representative violated his rights under Title I of the LMRDA, 29 U.S.C. §§ 411–412. The leading case in this area is *Finnegan v. Leu*, 456 U.S. 431,

2. On September 16, 1985, the attorney for Local 75 informed this court that the International had dissolved Local 75 effective March 1, 1985. According to a letter from the International's president, Locals 509 and 108 now have joint responsibility for Local 75's debts and responsibilities; it is not clear to which local Lynn now belongs. While it appears that a transfer of interest has occurred and, thus, a substitution of parties under Federal Rule 25(c) might be appropriate, because we affirm the district court's grant of summary judgment in favor of the Local, such a substitution is unnecessary.

432–33, 102 S.Ct. 1867, 1868–69, 72 L.Ed.2d 239 (1982), where the Court held that Title I did not apply to appointed union officials who had campaigned against a newly-elected union president; thus, the president had the authority to remove them from their positions. In so holding, the Court said that the purpose of Title I was to protect rank-and-file members and that it was not intended to upset traditional union patronage practices. *See id.* at 436–37, 102 S.Ct. at 1870–71. Lynn argues that *Finnegan* does not apply here because it dealt with appointed officials, while he was elected to his position by the membership. The International argues, first, that *Finnegan* should control this case and, second, that even if it does not, Hawkins, acting as trustee, had the authority under the International's constitution to remove Lynn from his post.

### A. *Free Speech Rights of Elected Officials*

■ Whether, in light of *Finnegan*, an elected union official may be removed from office for the exercise of free speech rights guaranteed by the LMRDA presents a question of first impression in this circuit.[3] We hold that, at a minimum, a retaliatory removal from elective office violates section 102 of the LMRDA when it occurs as "a purposeful and deliberate attempt ... to suppress dissent within the union." *See Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973).[4]

In *Finnegan*, the Court held that section 609 of the LMRDA protects an appointed union official only in his status as a member and not in his status as an officer. *See Finnegan*, 456 U.S. at 437–39, 102 S.Ct. at 1871–72. Similarly, the Court emphasized that section 101 of the LMRDA defines an individual's rights as a member of the union, and not his rights as a union officer or

employee. *Id.* Thus, an individual may state a cause of action under section 101 only for those acts which violate his membership rights, and not for those which infringe upon whatever rights he may have acquired by virtue of his status as an officer or employee.

■ However, the Court also said that section 102 of the LMRDA, which protects "[a ]ny person whose rights secured by the provisions of this subchapter have been infringed ...", 29 U.S.C. § 412 (emphasis added), "provides independent authority for a suit against a union based on an alleged violation of Title I of the Act." *Finnegan*, 456 U.S. at 439, 102 S.Ct. at 1872. Thus, under certain circumstances, an official who alleges that union actions have infringed upon his Title I rights may state a cause of action under section 102. The question before us is whether Lynn's removal from his elected position "infringed" upon his Title I membership rights.

■ In this case, Lynn, as a member, clearly had the right under section 101(a)(1) "to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings ...," 29 U.S.C. § 411(a)(1), and also the right "to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon ... any business properly before the meeting ...," section 101(a)(2), 29 U.S.C. § 411(a)(2). *See Finnegan*, 456 U.S. at 437, 102 S.Ct. at 1871 (right to campaign for a candidate protected under section 101); *Sullivan v. Laborers' International Union of North America*, 707 F.2d 347, 350 (8th Cir.1983) (right to run for office protected by section 101). Thus, when Lynn attended the July 24, 1982 meeting to vote on Hawkins's proposed dues increase and spoke against it,

---

**3.** Our prior cases which discussed *Finnegan* all involved the removal of a policy-making official from appointive office. *See Bloom v. General Truck Drivers, Office, Food & Warehouse Union, Local 952*, 783 F.2d 1356 (9th Cir.1986); *NLRB v. Carpenters Local Union No. 35*, 739 F.2d 479 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985); *Childs v.*

*Local 18 International Brotherhood of Electrical Workers*, 719 F.2d 1379 (9th Cir.1983).

**4.** We do not address the question of when removal from appointive office, in an attempt to suppress dissent, violates section 102. *See Finnegan*, 456 U.S. at 440–41, 102 S.Ct. at 1872–73.

even though he was an officer, he was exercising a membership right protected by section 101(a).[5]

The next question which arises is whether Lynn's removal from office "infringed" upon his exercise of his Title I membership rights. In *Finnegan*, the Court said that the removal of the officials from office constituted only an indirect interference with their membership rights. *Finnegan,* 456 U.S. at 440, 102 S.Ct. at 1872. Like the officials in *Finnegan*, Lynn did not suffer any direct infringement of his Title I rights; that is, he was not prevented from attending or speaking at the meeting which considered the dues increase. Rather, like the officials in *Finnegan*, he, too, was ultimately forced to "choos[e] between [his] rights of free expression ... and [his] job[]." *Id.* (quoting *Retail Clerks Union Local 648 v. Retail Clerks International Ass'n,* 299 F.Supp. 1012, 1021 (D.D.C. 1969)).

This fact is not dispositive, however, for the *Finnegan* Court neither defined the scope of a section 102 claim nor held that only a direct infringement of a Title I right was actionable. Further, it is evident that its decision in *Finnegan* was based on Congress's intent in enacting the LMRDA: "... [T]he Act's overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." *Id.* at 441, 102 S.Ct. at 1873. Thus, as in *Finnegan*, permitting an elected president to select appointed administrators who reflect his views furthers the growth of union democracy. *Id.*

■ However, as the Court noted, the power to remove an official from office may also be used to suppress dissent, either through retaliation, *id.* (citing *Schonfeld* ), or through intimidation. The removal of an official under these circumstances can only impede the democratic governance of the union. Here, it is clear that Lynn's removal was precipitated by his outspoken opposition to the proposed dues increase, a position which also reflected the views of the majority of the union membership.[6] This is not a case involving a union patronage system; rather, it concerns an elected officer who is speaking not only for himself as a member, but also as a representative of those members who elected him.[7] We hold that, under these circumstances, Lynn alleged a cause of action under section 102.

## B. *Trusteeship*

Article Three, Section 2(c) of the International's constitution gives the International "the authority to suspend local union or council officers, business managers, or business representatives ..." while a local is under trusteeship. The International argues that, even if we were to find that

5. We note that the Eleventh Circuit distinguishes between "membership" speech, a right secured under section 101(a)(2), and "officer" speech, which is not. *Dolan v. Transport Workers Union of America,* 746 F.2d 733, 742 (11th Cir.1984). "Membership" speech becomes "officer speech" if it "advance[s] her duties of office or interfere[s] with these duties." *Id.* In addition, a policy making or policy-making official may engage in "officer" speech if she "could reasonably be perceived as speaking for the union, or if her speech affects performance of her specific duties...." *Id.*

With all due respect, we do not adopt the Eleventh Circuit's approach, for *any* speech could arguably "advance," "interfere," or "affect" an officer's performance of her duties: Just as "all speech by a member is, in a sense, membership speech ...," *id.,* so all speech by an officer could be "officer" speech. We further note that even if we were to adopt the remaining prong of the Eleventh Circuit's analysis, whether the officer "could reasonably be perceived as speaking for the union," it would not apply here, because Lynn's remarks occurred at an internal union meeting, while Dolan's statements were made to others outside the union.

6. On July 24, 1982, the proposed increase was defeated 130–121. Lynn was removed from office on July 29; Hawkins's letter specifically cited Lynn's failure to support the proposed dues increase as the major reason for his removal. Lynn's actions at the July 24 meeting were also one of the grounds for Hawkins's internal union charges against Lynn.

7. Allowing the removal of an elected official for exercising his free speech rights would in effect nullify a member's right to vote for a candidate whose views he supports.

Lynn's removal from office would ordinarily violate his rights under the LMRDA, Hawkins was acting within his authority as trustee, and thus Lynn's removal was proper.

■ In enacting the Title III trusteeship provisions of the LMRDA, Congress, while recognizing that trusteeships may be an effective tool for insuring internal union order, clearly intended to correct the abuses of trusteeships investigated by the McClellan committee. S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad.News, 2318, 2333, *and in* 1 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 at 413 (1959). *See generally,* Beaird, *Union Trusteeship Provisions of the Labor-Management Reporting and Disclosure Act of 1959,* 2 Ga.L.Rev. 469, 485–99 (1968). The imposition of trusteeships "as a means of consolidating the power of corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization" was a particular area of congressional concern. *Id.* Thus, Congress enacted section 302 of the LMRDA, 29 U.S.C. § 462, which states that a trusteeship may be imposed only "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

■ In giving effect to this expression of congressional intent, the courts have reviewed trusteeships to insure that they were imposed only for legitimate purposes, *see, e.g., Benda v. Grand Lodge of the International Association of Machinists & Aerospace Workers,* 584 F.2d 308 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979); *Jolly v.*

*Gorman,* 428 F.2d 960 (5th Cir.1970), *cert. denied,* 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971). Here, all of the officers of Local 75 asked the International to impose a trusteeship "to put this local on a sound financial basis." Because assuring sound financial management was one of Congress's goals in enacting Title III, and because the trusteeship was initiated by the Local, we find that the imposition of the trusteeship was proper.

■ However, just as the International may not impose a trusteeship for illegitimate purposes, such as suppressing dissent, *Benda,* 584 F.2d at 317 & n. 6, so it may not use the powers inherent in a legitimate trusteeship for similarly illegitimate purposes. Thus, while a trustee may remove an elected local officer for financial misconduct, *Mandaglio v. United Brotherhood of Carpenters and Joiners of America (General Executive Board),* 575 F.Supp. 646, 649 (E.D.N.Y.1983), or incompetence, *see Kinney v. International Brotherhood of Electrical Workers,* 669 F.2d 1222, 1227 (9th Cir.1982) (as amended), it may not do so in retaliation for the exercise of a right protected by the LMRDA, *see id.,* such as free speech, *see Benda,* 584 F.2d at 317 n. 6; *Brotherhood of Painters v. Local 127,* 264 F.Supp. 301 (N.D.Cal.1966).[8] We find that Lynn's allegations of retaliatory removal from his elected office may constitute a violation of his rights under the LMRDA; thus, the district court's grant of summary judgment for the International was improper.

## II.

### Second Cause of Action Against the Local

Lynn's second cause of action against the Local, for the alleged failure to refer him to work, raises three questions con-

---

**8.** We find *Buffalow v. Bull,* 619 S.W.2d 913 (Mo.Ct.App.1981), *rev'd on other grounds, Wimberly v. Labor & Industrial Relations Commission,* 688 S.W.2d 344 (Mo.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 1633, 90 L.Ed.2d 179 (1986), cited by appellants, distinguishable on

several grounds, particularly the fact that Buffalow did not allege that his LMRDA free speech rights had been violated by his removal from office. Further, Buffalow was part of the Local's established leadership, rather than head of a dissident group like Lynn.

cerning jurisdiction, the sufficiency of the pleadings, and whether the trial court properly granted the Local's motion for summary judgment. We will consider each of these questions in turn.

## A. *Jurisdiction*

Federal Rule of Appellate Procedure 3(c) states in part that "[t]he notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." Fed.R.App.P. 3(c). The initial issue which arises is whether this court has jurisdiction to consider Lynn's appeal of the summary judgment in favor of the Local when the notice of appeal names both the International and the Local, but cites only the judgment in favor of the International, and not the judgment in favor of the Local, as the subject of this appeal.

While some circuits construe Rule 3(c) strictly, *see, e.g., Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1373–75 (11th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983) (court will hear appeal of summary judgment, but not appeal of order to vacate injunction); *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1055–56 (5th Cir.), *cert. denied*, 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981) (court will consider only denial of motion for new trial and not denial of request for attorney's fees), this circuit has held that "a mistake in designating the judgment appealed from should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444 (9th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984); *see also Munoz v. Small Business Administration*, 644 F.2d 1361, 1364 (9th Cir.1981); *United States v. Walker*, 601 F.2d 1051, 1057–58 (9th Cir. 1979). In determining whether "intent"

and "prejudice" are present, we apply a two-part test: first, whether the affected party had notice of the issue on appeal; and, second, whether the affected party had an opportunity to fully brief the issue.

▪ Here, as in *Mercedes Benz*, appellant served the affected party, the Local, with a copy of the brief in which he raised the issue of the Local's alleged failure to dispatch him for work. Further, the Local filed a joint brief with the International in which this issue was fully discussed. Thus, the Local had notice of the issue to be appealed, and did not suffer any prejudice from appellant's failure to include the summary judgment verdict for the Local in his notice of appeal. Therefore, we find that under the *Mercedes Benz* standard, we have jurisdiction to hear Lynn's appeal against the Local.[9]

## B. *The Sufficiency of the Pleadings*

The second question to be considered is whether Lynn sufficiently alleged exhaustion of union remedies for the second cause of action in his complaint. Appellees contend that while Lynn alleged that he had exhausted his internal union remedies in his complaint on his first cause of action, the removal from his position of business representative, he did not allege that he had exhausted union remedies with regard to his second cause of action, the failure to dispatch him for work.

Paragraph 12 of Lynn's complaint on his first cause of action states that "[p]laintiff has spent over four (4) months exhausting internal hearing procedures to correct this unlawful discipline and removal from office to no avail as required by 29 U.S.C. § 411(a)(8) thus conferring jurisdiction on this Court under 29 U.S.C. § 412." On the second cause of action, paragraph 16 states that "[p]laintiff incorporates herein the allegations contained in paragraphs 1 through 15 by this reference as though fully set forth." In their answers, both the International and the Local raised, as an

---

9. While the appellant in *Mercedes Benz* had moved to amend the notice of appeal, such a motion is not necessary for this court to exer-

cise jurisdiction; neither the *Walker* nor the *Munoz* appellants had moved to amend their notices.

affirmative defense to the second cause of action, the *fact* that Lynn had failed to exhaust internal union remedies. The question of whether Lynn had failed *to allege* exhaustion was first raised, albeit obliquely, in the Local's motion for summary judgment, and surfaced as a full-blown issue in Lynn's opposition to the motion for summary judgment. Here, Lynn stated that exhaustion of remedies was alleged on the second cause of action, because paragraph 16 incorporated paragraph 12's statement of exhaustion. He also attached a declaration stating that he had tried to file a grievance with both the trustee and the business representative, but that each had refused to accept the grievance, saying that it should be filed with the other; presumably Lynn was attempting to demonstrate the futility of pursuing union remedies. The trial court made no findings of fact or law on the "failure to allege" issue, but ruled instead on the substantive exhaustion issue.

"A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R. Civ.P. 8(a)(2). Accordingly, a pleading must 'give[ ] fair notice and state[ ] the elements of the claim plainly and succinctly.'" *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (quoting 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 8.13 at 8–111 (2d Ed.1983)). Under a strict reading of Lynn's complaint, it would appear that he failed to allege exhaustion of union remedies for the failure to dispatch for work claim, because paragraph 12 only refers to exhaustion of remedies for the job removal claim.

However, under the liberal Federal approach, the purpose of the pleadings is to provide the opposing party with fair notice of the claim against it. *See, e.g., Shelter Mutual Ins. Co. v. Public Water Supply Dist. No. 7*, 747 F.2d 1195, 1197 (8th Cir. 1984); *Senter v. General Motors Corp.*,

532 F.2d 511, 522 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). The Federal Rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 906 (2d Cir.1977) (quoting *United States v. Hougham*, 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960)). Courts should construe pleadings liberally so as to do substantial justice, *see, e.g., Scherping v. Commissioner*, 747 F.2d 478, 480 (8th Cir. 1984); *Planned Parenthood Ass'n of Utah v. Schweiker*, 700 F.2d 710, 720, 226 U.S. App.D.C. 139 (D.C.Cir.1983), and should do so, if possible, in favor of the plaintiff. *Sennett v. Oppenheimer & Co., Inc.*, 502 F.Supp. 939, 942 (N.D.Ill.1980); *see also Herceg v. Hustler Magazine, Inc.*, 583 F.Supp. 1566, 1567 (S.D.Tex.1984).

 Here, a review of the record shows that both the International and the Local had fair notice of the nature of Lynn's claim of failure to dispatch him for work, and were able to litigate fully the exhaustion issue. Further, although Lynn did not move to amend his complaint, he did provide information in his opposition to the motion for summary judgment to support his claim that attempting to exhaust union remedies was futile, and the district court apparently considered this information in ruling on the merits of the exhaustion issue.[10] Thus, because the International and the Local suffered no prejudice from Lynn's failure to allege more explicitly the exhaustion of union remedies in his second cause of action, we will construe the pleadings in Lynn's favor, and consider the issue on the merits.

### C. The Grant of Summary Judgment

Whether the trial court properly granted the Local's motion for summary judgment

---

**10.** The district court could properly consider Lynn's affidavit in ruling on the motions for summary judgment, since Rule 56(c) indicates that the court should consider "the pleadings, depositions, answers to interrogatories, if any" in deciding whether to grant a summary judgment motion. Fed.R.Civ.P. 56(c).

raises two questions: First, was there a disputed issue of material fact, which would preclude the district court, as a matter of law, from granting summary judgment in favor of the Local? Second, did the trial court abuse its discretion in requiring exhaustion of union remedies?

With regard to the first question, a court may grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Here, the district court made the following findings of fact:

7. It is a controverted fact whether or not Lynn has sought to grieve his dispute by using the available grievance and arbitration remedies under the [collective bargaining] Agreement.

. . . .

9. Lynn has not attempted to use the Article 19 procedures of the Constitution with respect to his claim of job discrimination. He has neither alleged nor made a factual showing of any hostility sufficient to impair a fair hearing, that the Article 19 procedures are inadequate or of unreasonable delay.[11]

Lynn argues that because the district court found a controverted issue of fact, it could not grant summary judgment under Rule 56(c). The Local contends that the district court granted summary judgment on the uncontroverted fact in paragraph 9, that Lynn had not attempted to use the Article 19 procedures and hence had not exhausted his union remedies.

■■■ While there is no doubt that Lynn's attempts to file a grievance under the collective bargaining agreement are contested by the parties, "a dispute as to an immaterial fact does not preclude summary judgment." 10A C. Wright, A. Miller, & M.K. Kane, Federal Practice and

Procedure § 2725 at 89 (2d Ed.1983). In this circuit, "[a] material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1306 (9th Cir.1982). Because the collective bargaining procedures and the Article 19 procedures are separate proceedings, Lynn's attempts to file a grievance under the collective bargaining agreement are not relevant to his failure to exhaust his Article 19 remedies; thus, they do not affect the outcome of this issue. Hence, the Local's contention that the court granted summary judgment on an uncontroverted fact, failure to exhaust Article 19 remedies, is correct.

This then raises the question of whether the district court abused its discretion in doing so. In *Scoggins,* this court stated:

In this circuit, when a party moves for summary judgment in a Section 301 action citing failure to exhaust internal union remedies, the moving party must first establish the availability of adequate internal union remedies; the burden then shifts to the party opposing the motion to respond by affidavits or otherwise and set forth specific facts showing that exhaustion of remedies would have been futile.

*Scoggins,* 742 F.2d at 1230. Here, the Local did provide evidence of the availability of internal remedies by submitting its constitution, including Article 19. Thus, the burden now shifts to Lynn to show that to attempt to exhaust these remedies would be futile.

In *Clayton,* the Court held that a trial court has discretion in determining whether exhaustion of internal union remedies would be futile. In doing so, the court should consider at least three factors:

11. Article 19 of the Sheet Metal Workers' International Association Constitution and Ritual first states that "... any member ... whose constitutional rights are violated by any decision or order of a local union or council ... shall have the right to appeal as provided in this Article." § 1. It then sets out a series of appeals which may be taken to the General Presi-

dent (§ 2), the General Executive Council (§ 3), and finally the General Convention (§ 4). Finally, section 9 states that "[s]ubject to applicable laws, no local union, council, or officer or member thereof shall appeal to the Civil Courts for redress until all the internal remedies provided in this Constitution, including the right to appeal, have been exhausted."

first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095.

To demonstrate the first factor, Lynn alleges that the failure to process his collective bargaining grievance showed hostility at the Local level, and that the use of Article 19 procedures for his second cause of action would be futile because the International had ruled against him on his first cause of action. While Lynn did provide some evidence, through his declaration, that hostility towards him did exist at the Local level, he provided no evidence to support his contention that the individuals involved in the rest of the Article 19 process would handle his second claim unfairly.

The second factor, inadequacy, has two components, inability to reactivate the grievance and inability to award the plaintiff full relief. First, as in *Scoggins*, the record shows that Lynn did not argue the reactivation issue at the district court level and, hence, may not raise this issue on appeal. *Id.* at 1229–30. Second, Lynn claims that the appeals process is inadequate because it would not provide compensation for lost wages. However, Article 19, section 8 allows each of the decisionmakers in the process to "fix the penalty, if any" for infractions. Thus, Lynn could obtain monetary damages through the union procedures.

Finally, as far as the third factor, unreasonable delay, is concerned, under 29 U.S.C. § 411(a)(4), a member is not required to wait more than four months for the exhaustion of internal remedies before filing suit. More important, in his opposition motion, Lynn indicated a willingness to comply with the internal procedures for the four-month period. Thus, he cannot now argue that the four-month period caused an unreasonable delay in the handling of his case.

▇▇▇▇ Based on our review of the *Clayton* factors, we find that the district court did not abuse its discretion in requiring Lynn to exhaust his union remedies and in granting summary judgment for the Local.[12]

## III.

### Second Cause of Action Against the International

Lynn contends that the district court abused its discretion in dismissing his second cause of action, alleging a failure to refer him to work, for failure to prosecute under Local Rule 9.10.[13] In this case, the

---

12. Because we affirm the summary judgment on the grounds that Lynn failed to exhaust his administrative remedies, we do not address the question of whether the alleged failure to refer to work is impermissible discipline, *compare Murphy v. International Union of Operating Engineers, Local 18*, 774 F.2d 114, 122 (6th Cir. 1985) (manipulation of referral system impermissible) *with Hackenburg v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 101 Thereof*, 694 F.2d 1237, 1239 (10th Cir.1982) ("benching" permissible), or a violation of the LMRA, 29 U.S.C. § 185.

13. The Central District of California's Local Rule 9.10 states that:

No continuance shall be granted merely on the stipulation of the parties. If the Court is satisfied that counsel are preparing the case with diligence and additional time is required to comply with this rule, the Pre-Trial Conference may be continued upon submission of a timely stipulation signed by all counsel setting forth the reasons for the requested continuance. The stipulation should also set forth what has been accomplished in preparing the case for the Pre-Trial Conference. No continuance will be granted unless the stipulation has been lodged before the date upon which the Pre-Trial Conference Order must be lodged with the Court. Counsel shall inform the court clerk immediately by telephone or other expeditious means when a stipulation is

district court had continued the pretrial conference once, presumably because of the unexpected dismissal of the appeal. However, even if we take into account the time Lynn's attorney was out of the country, he still had approximately two weeks, from his return on September 10 until the conference date of September 24, within which to ascertain the nature of the NLRB proceedings and to prepare for the conference. Further, even if we were sympathetic to Lynn's mistaken strategic decision, there was still a five-day period between September 19, when Lynn's counsel learned of the true nature of the NLRB proceedings, and the pretrial conference date.

 A review of the record shows that Lynn's counsel took no action either to apprise the court and opposing counsel of the situation or to prepare for the conference. Under these circumstances, we find that the trial court acted within its discretion in dismissing Lynn's second cause of action against the International.

## CONCLUSION

The district court's grant of summary judgment on Lynn's first cause of action is reversed, and the case is remanded to the district court for further proceedings. The grants of summary judgment for the International and the Local on the second cause of action are affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED.

KENNEDY, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues that the trial court was correct in its grant of summary judgment to the Local on the work referral claim and in its dismissal of the same claim against the International for failure to prosecute. I concur in Parts II and III of the court's opinion.

I submit with all respect, however, that the majority errs in holding that union leadership cannot discharge a business manager who actively opposes the leadership on a fundamental issue of union policy. The majority reaches this conclusion only by what I conclude is a misreading of the Supreme Court's opinion in *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). The majority's error is compounded by the creation of an unwarranted conflict with the two other circuits that have addressed the point. I dissent from the court's holding on this critical aspect of the case, set out in Part I of its opinion.

There is no dispute that Lynn, as a union member, had the right to participate in and vote at membership meetings, 29 U.S.C. § 411(a)(1), and express his views on business before such meetings, 29 U.S.C. § 411(a)(2); it is also not disputed that he was discharged by Trustee Hawkins from his position as business representative when he exercised these rights to speak against Hawkins' proposed dues increase at the special June 24 membership meeting. Although this action indirectly penalizes Lynn for his exercise of protected rights, it does so only in his capacity as an officer, not as a member. Absent a serious threat to the continued democratic governance of the union, such a dismissal does not violate the rights of union membership protected by the LMRDA, and the case authority on this point from other circuits is persuasive.

to be submitted for continuance of the Pre-Trial Conference.

A motion for continuance may be noticed upon five (5) days' notice to be heard not later than the last Motion Day before the date for which the Pre-Trial Conference has been set.

Local Rule 27.2 provides that

Failure of counsel for any party to take any of the following steps may be deemed an abandonment or failure to prosecute or defend diligently by the defaulting party:

(a) Complete the necessary preparation for pre-trial;

(b) Appear at pre-trial conferences;

(c) Be prepared for trial on the date set; or

(d) Appear at any hearing where service of notice of the hearing has been given or waived.

Judgment may be entered against the defaulting party either with respect to a specific issue or on the entire case.

In *Finnegan* the Supreme Court held that an appointed union official discharged from office for supporting a defeated candidate for union president could not state a claim for violation of membership rights secured by the LMRDA, 29 U.S.C. § 411(a). I should have thought it explicit in *Finnegan* that the key distinction is between an infringement on rights in the complainant's capacity as a union member and the termination of his privilege to act as a union officer. The Supreme Court observed "that it was rank-and-file union members— not union officers or employees, as such— whom Congress sought to protect" when it enacted Title I of the LMRDA. 456 U.S. at 437, 102 S.Ct. at 1871. The fact that the conduct complained of in *Finnegan* indirectly interfered with membership rights, interference which may well have forced the removed officials to " 'choos[e] between their rights of free expression ... and their jobs,' " *id.* at 440, 102 S.Ct. at 1872 (quoting *Retail Clerks Union Local 648 v. Retail Clerks International Association*, 299 F.Supp. 1012, 1021 (D.D.C.1969)), was deemed insufficient to state a claim for infringement of rights secured by 29 U.S.C. § 411(a).

The Court in *Finnegan* left open the possibility that in some circumstances the retaliatory discharge of a union member from office might give rise to a cause of action under 29 U.S.C. §§ 411, 412. 456 U.S. at 440–41, 102 S.Ct. at 1872–73. The majority believes this to be such a case, finding that Lynn's dismissal came about because he outspokenly opposed the dues increase, and that LMRDA prohibits dismissal on these grounds because of the threat to democratic union governance. This conclusion not only misconstrues whatever exception to its holding the Supreme Court intended to leave open in *Finnegan*, but also departs from the understanding of the other circuits faced with determining the applicability of *Finnegan* to removals of elected union officials. Those courts have recognized that the potential threat to democratic governance that may inhere in permitting removals of elected union officials for opposing the views of other union officials does not transform allegations of ouster from office into a claim for infringement of membership speech. *Dolan v. Transport Workers Union of America*, 746 F.2d 733, 741 (11th Cir.1984); *Adams-Lundy v. Association of Professional Flight Attendants*, 731 F.2d 1154, 1159 (5th Cir.1984) (fact that removed officer was elected does not suffice to create a claim under LMRDA); *see also Sullivan v. Laborers' International Union of North America*, 707 F.2d 347, 350 (8th Cir.1983) (union's suspension of elected business manager did not, by itself, infringe officer's rights as a union member).

I agree with the majority's view, expressed in footnote 5, that the Eleventh Circuit's distinction in *Dolan* between officer speech and member speech is unnecessary and problematic. However, the majority's argument on this point actually cuts against its conclusion. *Finnegan* rests on the proposition that Title I protects rank-and-file union members, not officers. The nature of the speech prompting the removal is essentially irrelevant. As the Fifth Circuit recognized, removal of union officials, whether elected or appointed, does not sufficiently impair the integrity of union democracy to contravene membership rights protected by the LMRDA unless, as the Court in *Finnegan* suggested, the dismissal was part of " 'a purposeful and deliberate attempt to suppress dissent within the union.' " *Adams-Lundy*, 731 F.2d at 1159 (quoting *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973)); *see also Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873. Whatever the boundaries of any exception to the *Finnegan* rule might be, the mere fact that Lynn was an elected officer is not sufficient to bring this case within that exception. At least absent allegations that his suspension was part of a scheme to subvert the union's basic democratic structure, *Adams-Lundy*, 731 F.2d at 1159, or that his was a "nonconfidential and nonpolicymaking" position, *Finnegan*,

456 U.S. at 441 n. 11, 102 S.Ct. at 1873 n. 11 (leaving open applicability of holding to such employees), the injury suffered by Lynn is primarily connected with his status as an officer, not a union member, and does not support a claim under the LMRDA.

The courts that have considered the applicability of *Finnegan* to dismissals of elected union officials for the exercise of free speech or voting rights granted them as union members have noted the need of federal courts to exercise caution when asked to intervene in disputes between union officials. Here, the majority uses the occasion of a routine dismissal of an officer for failure to implement policy as its excuse to begin intervention and oversight in union affairs. Congress did not intend this intervention in the enactment of the LMRDA; we should not on the facts of this case begin intruding upon the details of union administration. *See Dolan*, 746 F.2d at 742 (when asked to intervene "in decisions made by [union] management about management, courts must measure their steps with extreme care"); *Adams-Lundy*, 731 F.2d at 1159 ("Congress has favored extrajudicial resolution of [labor] disputes"). The hesitancy of federal courts to attempt resolution of internal disputes between union officials does not evidence unfaithfulness to the LMRDA's goal of ensuring that unions have democratic governance. Rather, it reflects an understanding that, absent a serious threat to the union's basic democratic structure, "the ultimate power of decision" in such disputes is "vested in the voting membership of the union who have the ability to defeat officers abusing or misemploying their powers." *Adams-Lundy*, 731 F.2d at 1160. It should also be said that unions, too, have an interest in efficiency and orderly management, goals frustrated by today's ruling of the majority.

I dissent from that portion of the court's decision reversing the grant of summary judgment to the International on Lynn's job removal claim.