NATIONAL ABORTIONS FEDERATION, et al., Plaintiffs–Appellants,

v.

OPERATION RESCUE; Jeff White; Joseph Foreman; Dr. Randy Adler; John & Jane Does 1–100, Defendants–Appellees.

No. 90–55199.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1990.

Submission Withdrawn Dec. 13, 1991.

Resubmitted Oct. 22, 1993.

Decided Oct. 29, 1993.

Carol A. Sobel, ACLU Foundation of Southern California, Los Angeles, CA, Betty Wheeler, ACLU Foundation of San Diego and Imperial Counties, San Diego, CA, Paul Persons, Chico, CA, for plaintiffs-appellants.

Victor L. Smith, Los Angeles, CA, Samuel B. Casey, Whittier, CA, Cyrus Zal, Folsom, CA, for defendants-appellees.

Before HUG, and TROTT, Circuit Judges, and REED,* District Judge.

HUG, Circuit Judge:

This is an appeal from the dismissal of a class action seeking injunctive and declaratory relief to prevent Operation Rescue and others from interfering with women's access to abortion clinics and preventing and hindering state law enforcement officials from securing to women the ability to exercise that constitutional right, 721 F.Supp. 1168.

During the pendency of this appeal, the United States Supreme Court granted certiorari in a case involving a similar situation, in

* Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

which abortion clinics and organizations having members who wish to use the clinics brought an action against Operation Rescue for blocking the access of women who sought the services of the clinic. That case presented issues of whether provisions of the Ku Klux Klan Act, codified at 42 U.S.C. § 1985(3), could be invoked as a basis for relief. Nearly identical issues are involved in this case. Therefore, submission of this case was withdrawn pending the decision of the United States Supreme Court. The Court has rendered its decision in *Bray v. Alexandria Clinic*, 506 U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), and we hereby resubmit this case.

The Supreme Court in *Bray* held that the first clause of section 1985(3), the "deprivation" clause, did not provide a federal cause of action against persons obstructing access to abortion clinics. The Court declined to decide whether the second clause of section 1985(3), the "hindrance" clause, provided a federal cause of action. It held that the issue was not properly before the Court and, thus, remanded the case for further proceedings. *Bray*, —— U.S. at ——, 113 S.Ct. at 765, 122 L.Ed.2d at 56.

The *Bray* decision forecloses the plaintiffs' claims under the first clause of section 1985(3), but leaves open for our consideration the plaintiffs' claims under the "hindrance" clause.

## I. *FACTS*

The named plaintiffs-appellants are 12 health care providers, a not-for-profit corporation primarily consisting of member abortion providers, the membership organization of California National Organization of Women ("NOW"), a medical director of a health care provider, and two women denied access to non-abortion related family planning services and gynecological care furnished by

such providers (collectively "Federation"). The defendants-appellants include Operation Rescue, a nationwide association that is opposed to abortion, and five alleged individual "blockade" organizers (collectively "Operation Rescue").

The Federation appeals the district court's dismissal of its two federal claims, based on 42 U.S.C. § 1985(3), and six pendent state claims,[1] as well as denial of its motion for reconsideration or, alternatively, for leave to file a second amended complaint.

 The order dismissing the first amended complaint was granted pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief. Review for failure to state a claim upon which relief can be granted is *de novo*. See, e.g., *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). Review is limited to the contents of the complaint and all allegations of material fact are accepted as true and construed in the light most favorable to the plaintiffs. *Id.* A Rule 12(b)(6) dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Federation also appeals the denial of its alternative motion for leave to amend its complaint, pursuant to Fed.R.Civ.P. 15(a). Review is for an abuse of discretion. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987).

## II. *SUPREME COURT PRECEDENT*

The alleged federal cause of action was brought under the first two clauses of section 1985(3). These clauses provide a civil cause of action

---

1. The state claims alleged in the first amended complaint are:
 (1) violation of California constitutional rights, including the right to privacy;
 (2) violation of Cal.Civ.Code § 52.1;
 (3) tortious interference with business;
 (4) trespass;
 (5) intentional infliction of emotional harm; and

(6) public nuisance.
 The district court exercised its discretion to dismiss these state claims without prejudice. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ....

The first clause is commonly designated the "deprivation" clause; the second as the "prevention" or "hindrance" clause. We shall refer to the latter as the "hindrance" clause.

A. *Deprivation Clause*

In order to state a cause of action under the deprivation clause, the conspiracy must be for the purpose of depriving the person or class of persons of the "equal protection of the laws or of equal privileges and immunities under the laws."

The Supreme Court in *Bray* stated:

Our precedents establish that in order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, inter alia, (1) that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 29 L.Ed.2d 338, 91 S.Ct. 1790 [1798] (1971), and (2) that the conspiracy "aimed at interfering with rights" that are "protected against private, as well as official, encroachment," *Carpenters v. Scott*, 463 U.S. 825, 833, 77 L.Ed.2d 1049, 103 S.Ct. 3352 [3358] (1983).

— U.S. at ——, 113 S.Ct. at 758, 122 L.Ed.2d at 45. The plaintiffs' complaint under the deprivation clause was based upon the theory that either women in general or women seeking abortions constituted a protected class under the deprivation clause. The *Bray* opinion forecloses this assertion. The Court held that the phrase "otherwise class-based, invidiously discriminatory animus" could not apply to a class of women seeking abortions because they were not a protected class, and could not apply to women as a whole because the animus was not directed toward women but toward abortion.

*Bray*, —— U.S. at ——, 113 S.Ct. at 759, 122 L.Ed.2d at 46.

Further, the *Bray* opinion held that the deprivation clause requires "an intent to deprive persons of a right guaranteed against *private* impairment." *Id.* —— U.S. at ——, 113 S.Ct. at 762, 122 L.Ed.2d at 49. The Court held the right to abortion was guaranteed against *state* impairment, but not *private* impairment. *Id.* —— U.S. at —— ——, 113 S.Ct. at 763–64, 122 L.Ed.2d at 51–52 The Court also held that although the right of interstate travel is a right constitutionally protected against private impairment, that right was not the purpose of the alleged conspiracy. The Court stated that

A conspiracy is not "for the purpose" of denying equal protection simply because it had an effect upon a protected right. The right must be "aimed at." ... That was not shown to be the case here, and is on its face implausible. Petitioners oppose abortion and it is irrelevant to their opposition whether the abortion is performed after interstate travel.

*Id.* —— U.S. at —— – ——, 113 S.Ct. at 762–763, 122 L.Ed.2d at 50–51.

The Court also held that plaintiffs failed to establish a conspiracy to violate the right to interstate travel for a second reason. The guarantee of the right of interstate travel protects against two burdens, neither of which was established. The two burdens are the erection of actual barriers to interstate travel and treating interstate travelers differently from intrastate travelers. There was no indication of either in *Bray*. *Id.* —— U.S. at ——, 113 S.Ct. at 763, 122 L.Ed.2d at 51.

The substantive holding of the Court in *Bray* was that a cause of action under the deprivation clause did not exist for two reasons—the lack of a protected class and the lack of an alleged interference with a right guaranteed against private impairment. Though the application of the hindrance clause was discussed, the claim under that clause was remanded for further proceedings.

Justice Scalia wrote the opinion of the Court, in which Chief Justice Rehnquist and Justices White, Kennedy, and Thomas con-

curred in its entirety. Justice Souter concurred in part and dissented in part. He concurred in the holding that no cause of action was stated under the deprivation clause and agreed that the case should be remanded for consideration of whether a cause of action existed under the hindrance clause. In his partial dissent, he disagreed, however, with the analysis of the hindrance clause that was expressed in the dictum of Justice Scalia's opinion. *Id.* — U.S. at ——-——, 113 S.Ct. at 769–76, 122 L.Ed.2d at 59–67.

B. *Hindrance Clause*

The *Bray* case left open for later consideration the interpretation of the hindrance clause, but provides conflicting views on the issue. As we look to the opinions in the *Bray* case for guidance as to the intention of the Court, we are left with a perplexing situation. Given Justice White's resignation, four justices have indicated in dictum that the hindrance clause should be interpreted with the same restrictions as the deprivation clause and four justices interpret the hindrance clause more broadly.

It is thus our task to extend our best efforts to construe the "hindrance" clause giving due consideration to the language of the statute, the intent of Congress, and the reasoning in the varying opinions of the Justices of the Supreme Court.

The dictum of Justice Scalia's opinion tentatively interprets the hindrance clause to require the same two restrictions on the hindrance clause as on the deprivation clause, because we would otherwise be construing the phrase "equal protection" differently in two clauses of the same statute. *Bray,* — U.S. at —, 113 S.Ct. at 765–66, 122 L.Ed.2d at 54. Justice Scalia also expresses the concern that to rule otherwise would open the hindrance clause to overbroad applicability, such as "an available weapon against the mass 'sit-ins' that were conducted for purposes of promoting desegregation in the 1960's—a wildly improbable result." *Id.*

The four dissenters responded that the plain language of the statute does not require such restrictions. They contend that the Court in *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), imported requirements into the deprivation clause that were not expressed in the statutory language in order to give effect to Congress' intent to avoid extending the scope of that clause to encompass a vast array of traditional state law torts. They contend, however, that the same policy considerations are not involved in interpreting the hindrance clause. Justice Stevens notes that,

> In *Griffin,* the Court ... limited the application of the statute's first clause to conspiracies motivated by discriminatory intent to deprive plaintiffs of rights constitutionally protected against private (and not just governmental) deprivation. Finally, *Carpenters (Carpenters v. Scott,* 463 U.S. 825 [103 S.Ct. 3352, 77 L.Ed.2d 1049] (1983)) reemphasized that the first clause of § 1985(3) offers no relief from the violation of rights protected against only state interference....
>
> ....
>
> For present purposes, it is important to note that in each of these cases the Court narrowly construed § 1985(3) to avoid what it perceived as serious constitutional problems with the statute itself. Because those problems are not at issue here, it is even more important to note a larger point about our precedent. In the course of applying Civil War era legislation to civil rights issues unforeseeable in 1871, the Court has adopted a flexible approach, interpreting the statute to reach current concerns without exceeding the bounds of its intended purposes of the constitutional powers of Congress. We need not exceed those bounds to apply the statute to these facts.

— U.S. at ——-——, 113 S.Ct. at 783, 122 L.Ed.2d at 75–76.

This is the general view of each of the dissenting justices; however, each has a slightly different opinion of how the hindrance clause should be applied. These may be briefly cataloged as follows:

*Justice Souter*

The purpose of the conspiracy must be to hinder or prevent law enforcement authori-

ties from giving normal police protection to persons attempting to exercise an independently protected constitutional right. The proscriptions of the statute would not reach demonstrations that only have the incidental effect of overwhelming police authorities. *Id.* —— U.S. at —— n. 10, 113 S.Ct. at 777 n. 10, 122 L.Ed.2d at 68 n. 10. There need not be animus toward a particular protected class. There also is no need to require that the constitutional right be one protected only against state action, because thwarting the state's exercise of its police power is tantamount to the exercise of the state's police power. Thus, the constitutional right to abortion, as recognized by the Supreme Court, would qualify as a protected right under the hindrance clause. *Id.* —— U.S. at ——————, 113 S.Ct. at 776–77, 122 L.Ed.2d at 67–68.

*Justice Stevens, Joined by Justice Blackmun*

A conspiracy by force of numbers that seeks to prevent local officials from protecting the victims' constitutional rights is what section 1985(3) is designed to counteract. *Bray,* —— U.S. at ——, 113 S.Ct. at 779, 122 L.Ed.2d at 71. The constitutional rights involved are not restricted only to rights protected against state impairment. A class-based animus is required, but it can be inferred if the conduct of the conspirators burdens activities that are performed exclusively by members of a protected class, such as women. *Id.* —— U.S. at ——, 113 S.Ct. at 787, 122 L.Ed.2d at 80. The requirement is fulfilled even if the activity is directed at the activity rather than at the class members. *Id.*

*Justice O'Connor, Joined by Justice Blackmun*

The hindrance clause "covers conspiracies aimed at obstructing local law enforcement." *Id.* —— U.S. at ——, 113 S.Ct. at 804, 122 L.Ed.2d at 101. Women are a protected class and class-based discrimination is met whenever the motivation of private conspirators is directly related to characteristics of that class, such as the ability to become pregnant and to terminate pregnancy. *Id.* —— U.S. at ——, 113 S.Ct. at 801, 122 L.Ed.2d at 98. The hin-

drance clause does not require that the protected right be a constitutional right protected against private impairment. *Id.* —— U.S. at ——, 113 S.Ct. at 803, 122 L.Ed.2d at 100.

Although each opinion identifies some different essential feature or features, a composite of the three dissenting opinions, representing the views of four justices, incorporating every essential feature identified, in one or more opinions, can be composed as follows:

1. *Purpose*

The purpose of the conspiracy must be to hinder or prevent law enforcement authorities from giving normal police protection to a protected class of persons attempting to exercise a constitutional right. The hindrance clause does not reach demonstrations that only have an incidental effect of overwhelming police authorities.

2. *Class Protected*

The class protected includes women.

3. *Class–Based Animus*

Class-based animus is required, but it can be inferred if the conduct of the conspirators burdens activities that are performed exclusively by members of that class. Thus, conduct attempting to prevent women from obtaining an abortion constitutes class-based animus toward women.

4. *Constitutional Right Protected*

The right protected against the conspirators' actions must be a constitutional right but it need not be one protected only against private actions. Thus, the constitutional right to abortion, although protected only against state action, fulfills the requirement of the hindrance clause.

## III. *CONSTRUCTION OF HINDRANCE CLAUSE*

Focusing on the dictum of the majority opinion and the composite of the dissenting opinions, we now proceed to interpret the hindrance clause, having in mind the express language of the statute and the intent of

Congress in enacting this civil rights legislation.

It is important to keep in mind that section 1985(3) applies only to *private persons* impairing equal protection of the laws, whereas the Fourteenth Amendment applies to *state* impairment. The policy considerations are somewhat different. The full expanse of federal protection against state action is not necessarily what Congress intended for federal protection against private action. Likewise, there are different policy considerations involved in the application of the deprivation clause and the hindrance clause of section 1985(3).

We note first the distinction in the statutory language of the two clauses. The deprivation clause states the purpose of the conspiracy to be to deprive a class of persons of equal protection, whereas the hindrance clause states the purpose of the conspiracy to be to prevent or hinder the constituted state authorities from giving or securing to all persons within such state the equal protection of the laws. The fact that the hindrance clause applies only to conspiracies to hinder state officials raises no specter of federalizing general tort laws, which was the major concern expressed in *Griffin* and *Carpenters*.

On the other hand, a literal construction of the hindrance clause would make actionable the combined action of two or more persons for the purpose of hindering police from protecting the rights of any person under any state or federal law. Justice Scalia notes the literal language of the clause would be applicable to protecting the rights of restaurant owners from the civil rights sit-ins of 1960's. None of the four dissenting justices would give such a broad literal construction of the clause. Giving effect to every requirement expressed in one or more of their opinions, as we have noted, the hindrance clause would provide a cause of action only where the purposeful hindering of the police was directed at a protected class exercising a constitutional right. It would be considered directed at the class if it is an activity engaged in exclusively by that class.

As so interpreted, the applicability of the hindrance clause is considerably narrowed. First, the purpose must be to interfere with state law enforcement, not just to interfere with the persons seeking to exercise their legal rights. Thus, where the *effect* of a demonstration, a parade, or picketing interferes with someone's rights, this would not be actionable unless that was the *purpose* of the conspiracy. Second, if the interference with the police does not concern a protected class, it does not constitute a cause of action. Thus, the restaurant owners in the sit-ins or businesses in labor disputes would not have a cause of action under this clause. Third, the right must be a constitutional right. Thus, ordinary trespasses or torts would not qualify.

Although the first restriction—the purpose restriction—is expressed in the language of the statute, the latter two—the class restriction and the constitutional right restriction— are not. Thus, this interpretation of the hindrance clause also imports some restrictions into the express language of the statute in order to effect congressional intent.

A legitimate question is raised in the dictum of Justice Scalia's opinion—if we are placing class and constitutional right restrictions on the first clause of the statute in order to effectuate congressional intent, should we not utilize the same restrictive language for the second clause. He notes that both clauses refer to equal protection of the laws. A persuasive answer, however, is that the same overbreadth concerns are not present in each. The purpose of interfering with state law enforcement avoids the major reason for the restrictions applied in *Griffin* and *Carpenters*—the potential constitutional problem of federalizing state tort law.

There is a significant distinction between the clauses. The deprivation clause concerns conspiracies of some private persons to commit tortious actions against other private persons. The restrictions of *Griffin* and *Carpenters* leave most of such activity to be handled by state enforcement. The hindrance clause, on the other hand, concerns conspiracies to thwart state law enforcement from protecting against such tortious activity.

With the hindrance clause being directed at thwarting state law enforcement from pro-

tecting activities the deprivation clause leaves for state law enforcement, there is reasonable justification for covering at least all constitutional rights and activities exclusively engaged in by a protected class.

## IV. ALLEGATIONS OF THE COMPLAINT

█ The First Amended Complaint that was dismissed by the district court, in its Second Cause of Action, under the heading "Conspiracy to Frustrate and/or Hinder Law Enforcement," made the following allegations:

Defendants conspired together with each other and other parties presently unknown for the purpose of preventing and/or hindering the constituted authorities of the state of California from giving or securing to all women within this state the equal protection of the laws. In particular, defendants have engaged in a deliberate course of conduct aimed at frustrating the equal protection of the laws for women's medical care providers and their patients.

On April 29, 1989, for example, during an Operation Rescue blockade of a medical facility in San Diego, several leaders of Operation Rescue tied rope around their legs, binding the blockaders together so that police officers were required to cut the rope with scissors before those blockaders could be removed from the entrance to Dr. Rand's office. On June 10, 1989, during an Operation Rescue blockade in San Diego, three Operation Rescue participants threw themselves under a police van and held on to the underside of the vehicle to delay police in removing those already arrested. In Cypress on March 23, 1989, Operation Rescue blockaders crawled under and in front of the police van to prevent demonstrators from being removed. On June 10, 1989, in La Mesa, California, blockaders chained doors shut to a hallway leading directly to a clinic, impeding police and patient access to the area, as well as creating a safety hazard to staff and patients who were inside the clinic at the time. During a "minuteman" raid by Operation Rescue in San Marcos on July 20, 1989, four blockaders locked themselves together at the neck with interlocking solid bicycle locks in a deliberate attempt to frustrate police efforts to remove them from the doctor's office. In other instances throughout the state, Operation Rescue blockaders have used special heavy-duty locks and chains to attach themselves to heavy or immovable objects and thereby frustrate and hinder law enforcement from removing them from the area.

At the date of the blockades, Operation Rescue has deliberately kept secret their target sites to prevent law enforcement from utilizing proactive means of maintaining access to these medical facilities. On site, Operation Rescue has used a crawl technique to move new blockaders in as police attempt to remove those already present. At the October 21 blockade of the Family Planning Associates facility in La Mesa, blockaders rushed the entrance as well as crawling in and around police.

When police attempt to remove demonstrators, they engage in physical tactics including going limp and crossing their feet at the ankles and bending them up at the knees to prevent police from forcing Operation Rescue to walk away after being arrested. All of these tactics are done deliberately to prevent police from removing demonstrators in a timely fashion and maintaining access to the targeted medical facilities.

The proposed Second Amended Complaint added the following allegation:

Defendants negotiate with police in order to obtain agreements with the police regarding whether they will be arrested, and the timing and conditions of their arrest. Defendants engage in these negotiations deliberately to alter police conduct so that police conduct will aid in the achievement of defendants' blockade goals. For example, on August 12, 1989, in response to these tactics by defendants, the police attempted to negotiate an agreement with the FPA clinic, which was blockaded by defendants, to permit defendants to continue their blockade until 1:30 p.m.; the police also requested that the clinic shut down five hours early so that defendants would leave. By further example, at an

Operation Rescue blockade in Concord, police sought an agreement from the targeted clinic not to open for the day, so that defendants would get up and walk if arrested. By further example, defendants negotiated an agreement with the Ventura Police Department that they would be permitted by the police to extend the time of their July 6, 1989 blockade in exchange for not going limp when arrested. For a period of time during that blockade, police permitted defendants to block the hallway entrance to the clinic, but threatened clinic staff with arrest if they left the parking lot and attempted to enter their office, based upon false information provided by defendants to police. By way of further example, on August 13, 1989, sheriff's deputies entered into an agreement with defendants at approximately 9:00 a.m. to allow defendants to block access to an FPA clinic for the entire day. Deputies then allowed defendants to move freely back and forth across police lines, and to bring in food and drinks to blockaders; when clinic staff who were blocked inside the clinic attempted to have food brought in for themselves and their patients who were blocked inside with them, deputies refused to allow food to be brought to them and threatened to arrest the person bringing the food if he crossed the police line. *See* Declarations of Michael Monji and Betty Ann Downing, attached hereto and incorporated by reference thereto as though fully set forth herein.

The district court's denial of the proposed second amended complaint was not on the basis of bad faith, undue delay, or prejudice to the opposing party. *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989). The reason for the denial of leave to amend was that the proposed amended complaint still failed to state a claim for relief. Thus, it is appropriate to consider the proposed amended complaint to determine if a cause of action is stated.

The complaint adequately alleges a cause of action for a conspiracy to hinder state law enforcement officers from securing to women the right to obtain an abortion. These alle-
gations, if proven, are sufficient to create a question of fact to be determined at trial.

## V. CONCLUSION

■ We conclude that a conspiracy to prevent or hinder state law enforcement officers from securing the constitutional right to an abortion for women, a class exclusively seeking to exercise that right, is actionable under the hindrance clause of section 1985(3). We do not determine the extent to which the hindrance clause applies; only that this application is within the express language of the statute and fulfills the intent of Congress in this civil rights statute. The allegations of this complaint state the type of nationwide conspiracy to prevent or hinder state law enforcement from securing and protecting women in the exercise of a constitutional right that is analogous to the type of conspiracy to hinder state law enforcement that brought about the original enactment of the hindrance clause of section 1985(3).

**REVERSED and REMANDED for further proceedings consistent with this Opinion.**

TROTT, Circuit Judge concurring and dissenting:

With four apparent votes on one side of the "hindrance" or "prevention" clause issue, and four on the other (albeit supported by dissonant reasoning), we do face a practical dilemma caused by a new justice on the court who has yet to be heard on this contentious issue. The dilemma, however, simply requires us to use our best efforts to analyze this clause of the statute in the light of its plain language *and* applicable precedents as we do our best to render a proper decision in this case. After considerable study, and with respect and appreciation for the thoughtful work done by Judge Hug, it is my opinion that Justice Scalia's "hindrance" clause analysis in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) is persuasive. My conclusion in this regard rests not only on the analytical views expressed by Justice Scalia and four of his colleagues, but also on my belief that it is inappropriate for a court of appeals judge essentially to write off *Griffin*

**688**

*v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) and *Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Justice Souter has that prerogative, but I do not. Thus, I am persuaded (1) that the words "equal protection" in both clauses of the statute have the same meaning, and that these words *as interpreted by the Court currently* require proof of a class-based invidiously discriminatory animus to create a viable cause of action under either clause, and (2) that it must also be demonstrated that the conspiracy was "aimed at interfering with rights" that are "protected against private, as well as official encroachment." *Carpenters,* 463 U.S. at 833, 103 S.Ct. at 3359. I will not elaborate further, however, because an already well-informed Supreme Court will surely decide this issue in short order.

Justice Kennedy also makes some worthy points. He points to the dissenters' inability "to agree on a single rationale" as a reason to distrust their conclusions, *Bray,* 506 U.S. at ——, 113 S.Ct. at 766, and he correctly notes that "a false step in interpreting § 1985(3) risks making a whole category of ordinary state crimes a concurrent violation of a single congressional statute passed more than a century ago." *Id.*

Thus, I concur in Judge Hug's opinion holding that *Bray* forecloses the plaintiffs' claims under the first clause of section 1985(3), but I respectfully dissent with regard to his holding that they have stated a cause of action under the second clause of that statute.