34 F.3d 845
 PORTLAND FEMINIST WOMEN'S HEALTH CENTER, an Oregon nonprofit
corporation; Amy Aycrigg; Geri Craig, et al.,
Plaintiffs-Appellees,
v.
ADVOCATES FOR LIFE, INC., an Oregon nonprofit corporation;
et al., Defendants-Appellants.
 No. 91-35512.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 16, 1992.
Submission Withdrawn Oct. 29, 1992.
Resubmitted Aug. 25, 1994.
Decided Sept. 2, 1994.
 
 Henry Kane, Beaverton, OR, for defendants-appellants.
 Stephen S. Walters and Mary K. VanderWeele, Stoel, Rives, Boley, Jones & Grey, Portland, OR, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before: BEEZER, NOONAN, and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 This case involves an attempt by an abortion clinic to identify and to use a legal remedy to prevent anti-abortion activists from disrupting the performance of the clinic's services to women. The plaintiff, Portland Feminist Women's Health Center ("PFWHC"), sued right-to-life activists under, inter alia, 42 U.S.C. Secs. 1985(3) and 1986 on behalf of a class of women who sought to exercise their right to have an abortion. PFWHC claimed the defendants violated two of PFWHC's patients' constitutional rights: 1) the right to interstate travel; and, 2) the right to exercise their choice to have an abortion. The case was tried to a jury which returned a verdict against defendants Advocates for Life ("AFL"), Andrew Burnett, and Priscilla Martin. These defendants appealed.
 
 
 2
 After oral argument, we deferred submission of this case pending the Supreme Court's decision in Bray v. Alexandria Women's Health Clinic, --- U.S. ----, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). After the Supreme Court decided Bray, we ordered the parties to brief the issues in light of Bray. Then, after due consideration of Bray, we issued an opinion on September 20, 1993. Based on Bray, we reversed the district court's judgment, holding that the plaintiffs had failed to state a claim cognizable under Sec. 1985(3).
 
 
 3
 On October 29, 1993, however, this court filed an opinion in National Abortions Federation v. Operation Rescue, 8 F.3d 680 (9th Cir.1993) ("Operation Rescue"). That case involves among other issues the vigorously disputed question of whether a complaint's allegations that an anti-abortion group had conspired to hinder or prevent state law-enforcement officials from protecting a woman's right and ability to obtain an abortion are sufficient to state a claim under the "hindrance" clause of Sec. 1985(3). In a divided opinion, our court answered that question in the affirmative. That answer directly affected the resolution of the instant case. Thus, on October 19, 1993 we ordered our opinion recalled and withdrawn and again deferred submission so the parties could consider the impact of Operation Rescue on this case.
 
 
 4
 The district court had jurisdiction under 28 U.S.C. Sec. 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291. Because this case involves issues of statutory and constitutional interpretation, our review is de novo. Swanson v. United States, 789 F.2d 1368, 1370 (9th Cir.1986). Guided by the Supreme Court's decision in Bray and our own opinion in Operation Rescue, we reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.
 
 
 5
 * AFL is a nonprofit corporation which opposes abortion. Defendant Andrew Burnett is the founder and director of AFL. Defendant Priscilla Martin acted as a spokesperson and representative of AFL. AFL organized 10 or 12 large picket lines at the Portland Feminist Women's Health Center ("PFWHC") during 1985 and 1986. AFL's apparent purpose was to discourage abortions. AFL also organized four "rescue missions" at the Health Center. During rescue missions, AFL members placed themselves in front of the Health Center's doors, picketed or engaged in "sidewalk counsel," prayed, and sang songs in a coordinated effort to "save the [lives] of children ... who are about to die."
 
 
 6
 PFWHC is a nonprofit clinic that provides health services including abortion. PFWHC filed suit against AFL and the other defendants in state court seeking relief on multiple claims: (1) conspiracy to violate civil rights under 42 U.S.C. Secs. 1985(3), 1986 (1988); (2) Oregon RICO, Or.Rev.Stat. Sec. 166.715-.735 (1993); (3) intentional interference with business relations; (4) intentional infliction of emotional distress; (5) assault; and (6) defamation.
 
 
 7
 Defendants removed the case to the district court pursuant to 28 U.S.C. Sec. 1441. The district court initially dismissed the federal claims with leave to amend but exercised discretionary jurisdiction over the pendent state claims. Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc., 681 F.Supp. 688 (D.Or.1988). Plaintiffs then amended their Complaint, and the district court subsequently held they had properly stated claims under 42 U.S.C. Secs. 1985, 1986. Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc., 712 F.Supp. 165 (D.Or.1988).
 
 
 8
 The district court issued a preliminary injunction on June 9, 1986, which this court affirmed with a slight modification. Portland Feminist Women's Health Ctr. v. Advocates for Life, 859 F.2d 681 (9th Cir.1988). Thereafter, AFL, defendants Burnett, Martin and others were held in contempt for violating the injunction.
 
 
 9
 The case was tried to a jury which returned a general verdict against AFL on PFWHC's 42 U.S.C. Sec. 1985(3) and Oregon RICO claims, and against defendant Martin on PFWHC's 42 U.S.C. Sec. 1985(3) claim. The defendants unsuccessfully moved for judgment non obstante veredicto. On March 13, 1991, the district court entered its Final Judgment and Permanent Injunction, awarding PFWHC $6,024 against AFL, $500 against Martin, and granting a permanent injunction against AFL, Burnett, and Martin. The court subsequently granted plaintiffs' petition for attorneys' fees pursuant to 42 U.S.C. Sec. 1988 (1988) and Or.Rev.Stat. Sec. 166.725(7)(a) (1993).
 
 II
 
 10
 One component of PFWHC's Sec. 1985(3) theory was recently rejected outright by the Supreme Court in Bray v. Alexandria Women's Health Clinic, --- U.S. ----, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). In Bray, abortion clinics and abortion rights organizations applied for a permanent injunction to enjoin anti-abortion organization members from trespassing on, impeding, or obstructing ingress to or egress from facilities providing abortion services and related counseling. The district court in Bray had held that by conspiring to deprive women seeking abortions of their right to interstate travel, petitioners had violated the first clause of 42 U.S.C. Sec. 1985(3), known as the "deprivation" clause, which prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." See NOW v. Operation Rescue, 726 F.Supp. 1483 (E.D.Va.1989). The district court in Bray ruled for the abortion clinics on their pendent state-law claims of trespass and public nuisance and enjoined the anti-abortion activists from trespassing on, or obstructing access to, specified clinics. Id. at 1495-96. Finally, the district court in Bray ordered the anti-abortion activists to pay the clinics' attorneys' fees and costs on the Sec. 1985(3) claim pursuant to 42 U.S.C. Sec. 1988. Id. at 1498.
 
 
 11
 The Court of Appeals for the Fourth Circuit affirmed. NOW v. Operation Rescue, 914 F.2d 582 (4th Cir.1990). However, the Supreme Court reversed the Fourth Circuit Court of Appeals, holding that the "deprivation" clause of Sec. 1985(3) does not provide a federal cause of action against persons obstructing access to abortion clinics. Bray, --- U.S. at ----, 113 S.Ct. at 758-64. Specifically, the Court held that: (1) "women seeking abortion" cannot constitute a class for purposes of the first clause of Sec. 1985(3), id. at ---- - ----, 113 S.Ct. at 759-60; (2) the "animus" requirement demands a purpose that focuses upon women by reason of their sex and thus, the goal of preventing abortion does not qualify as an invidiously discriminatory animus directed at women in general, id. at ---- - ----, 113 S.Ct. at 760-61; (3) an anti-abortion demonstration's incidental effect on some women's right to interstate travel does not suffice to show conspiracy to deprive those women of that right, id. at ---- - ----, 113 S.Ct. at 762-63; (4) deprivation of the federal right to abortion cannot serve as an object of a purely private conspiracy, id. at ---- - ----, 113 S.Ct. at 764; (5) the claim that the alleged conspiracy was for purposes of preventing or hindering authorities from securing equal protection to all was not suitable for review, id. at ---- - ----, 113 S.Ct. at 764-67; and (6) the abortion clinics and other respondents were not entitled to attorneys' fees, id. at ---- - ----, 113 S.Ct. at 767-68.
 
 
 12
 The "deprivation" clause issue in the instant case is controlled by Bray and our opinion in Operation Rescue. In an attempt to avoid Bray, PFWHC argues that the district court judgment must be affirmed because AFL appealed only the district court's denial of its motion to dismiss for failure to state a claim, and though the evidence presented at trial may be insufficient to prove each of its claims, the evidence itself is technically not before us on appeal.
 
 
 13
 In an attempt to perfect this argument, PFWHC points to the bare and factually unsupported allegation in its complaint that AFL's actions were motivated by animus "toward women generally." PFWHC asserts that these three words in a lengthy complaint, which is now part of an enormous record, are sufficient to state a claim under the first clause of Sec. 1985(3). PFWHC argues that because the Supreme Court declined to hold that "women generally" could not constitute a class for purposes of Sec. 1985(3), Bray, --- U.S. at ----, 113 S.Ct. at 759, and because we should be limited to reviewing the sufficiency of this bare allegation, we must affirm the district court's denial of AFL's motion to dismiss and rule in their favor on the appeal. A party that has gone to trial, presented evidence, and submitted jury instructions in a case that then proceeds to judgment, however, cannot merely rest its appeal on three isolated words in its pleadings where the case as presented to the court from its inception completely undercuts an argument made for the first time in a supplemental reply brief. This is especially true where the law at issue is in great transition. Thus, we decline appellees' request to approach this appeal wearing blinders.
 
 
 14
 Though the Court in Bray did decline to consider whether women in general could qualify as a class under Sec. 1985(3), it did so because it found that activist opposition to abortion cannot meet the "animus" requirement of "at least a purpose that focuses upon women by reason of their sex. " Id. at ----, 113 S.Ct. at 759. The Court explained:
 
 
 15
 Respondents' contention ... is that the alleged class-based discrimination is directed not at "women seeking abortion" but at women in general. We find it unnecessary to decide whether that is a qualifying class under Sec. 1985(3), since the claim that petitioners' opposition to abortion reflects an animus against women in general must be rejected. We do not think that the "animus" requirement can be met only by maliciously motivated, as opposed to assertedly benign (though objectively invidious), discrimination against women. It does demand, however, at least a purpose that focuses upon women by reason of their sex --for example (to use an illustration of assertedly benign discrimination), the purpose of "saving" women because they are women from a combative, aggressive profession such as the practice of law. The record in this case does not indicate that petitioners' demonstrations are motivated by a purpose (malevolent or benign) directed specifically at women as a class; to the contrary, the District Court found that petitioners define their "rescues" not with reference to women, but as physical intervention "between abortionists and the innocent victims," and that "all [petitioners] share a deep commitment to the goals of stopping the practice of abortion and reversing its legalization."
 
 
 16
 Id. at ---- - ----, 113 S.Ct. at 759-60 (emphasis added).
 
 
 17
 A searching review of the complaint as a whole, the briefs, the record, Judge Frye's published opinions, and particularly the jury instructions describing the plaintiffs' case reveals that the jury in the instant case could not have and did not find appellants liable on the theory that they discriminated against women by reason of their sex. Instead, the instructions permitted the finding of liability only if the "defendants acted against the plaintiffs because the plaintiffs belonged to or associated with a class of women who were seeking to exercise their Constitutional rights to have an 'abortion.' " (emphasis added). In her second published opinion in this case, Judge Frye outlined and circumscribed this case and told us precisely why she believed the complaint was sufficient to state a cause of action under Sec. 1985(3). Judge Frye said, "In this case plaintiffs are a class of women who choose to exercise their constitutional right of privacy by having an abortion.... Plaintiffs' amended complaint alleges discrimination against a class of women, albeit a particular class of women. In light of Reichardt, [Life Ins. Co. v. Reichardt, 591 F.2d 499 (9th Cir.1979) ], this court finds that plaintiffs allege a class of women that may be protected under Sec. 1985(3)." Portland Feminist, 712 F.Supp. at 169. (emphasis added). This is the only fair reading of the complaint. Thus, we conclude that the "deprivation" clause aspect of the complaint in this case is no different in substance than its counterpart in Bray, and that the complaint should be treated in the same light.
 
 
 18
 The Supreme Court flatly rejected the conclusion that liability under the "deprivation" clause of Sec. 1985(3) could be predicated on discrimination against a class of "women seeking abortion." Id. at ----, 113 S.Ct. at 759. Given the Court's ruling in Bray, our holding in Operation Rescue, and the fact that the jury only considered liability based on discrimination against "a class of women who were seeking to exercise their Constitutional right to abortion," we conclude that the judgment against defendants on the Sec. 1985(3) claim--to the extent it rests on a "deprivation" clause theory of liability--rests on unsound ground.
 
 III
 
 19
 PFWHC argues that because its complaint alleged that an object of defendants' conspiracy was to influence public officials to deny women their constitutional right to choose abortion, it stated a claim under the second clause of 42 U.S.C. Sec. 1985(3), known as the "hindrance" or "prevention" clause. A review of Judge Frye's opinions, the briefs, the record, and the jury instructions demonstrates that PFWHC is correct. In their Amended Complaint, plaintiffs alleged in their Statement of Facts that:
 
 
 20
 Defendants have agreed and conspired among themselves and with others to disrupt, harass, and otherwise harm persons who provide or wish to obtain abortions, including the Health Center and the individual plaintiffs. Defendants' avowed intention is to destroy the business and property of such persons, to prevent such persons from exercising their constitutional rights to travel and to choose safe and legal abortion, and to influence state and local officials to deny such persons' constitutional rights.
 
 
 21
 (Amended Complaint, Paragraph 15).
 
 
 22
 In their First Claim for relief, they alleged that:
 
 
 23
 An object of defendants' conspiracy is to deny those persons who are members of the classes described in paragraph 25 their constitutional rights to travel, and to influence state and local officials to deny those persons their constitutional right to privacy in matters of procreational freedom.
 
 
 24
 (Amended Complaint, Paragraph 27).
 
 
 25
 We conclude that this language read in light of the wording of the statute and our opinion in Operation Rescue was (barely) sufficient to give fair notice of a "hindrance" clause claim. See Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1153 (9th Cir.1989) ("[T]he purpose of notice pleading is to give general notice to the defendant of the nature of plaintiff's claim."); Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 
 26
 Moreover, the pre-trial order makes reference to this theory, and Judge Frye's instructions to the jury track the "hindrance clause" allegations in the Amended Complaint:
 
 
 27
 If private persons conspire to prevent or hinder the constituted authorities of any state from giving or securing equal treatment for women seeking to exercise their constitutional right to have an abortion, these private persons violate the constitutional right of these women to have an abortion.
 
 
 28
 Finally, the evidentiary record contains photographs of the defendants blocking doors to the clinic and hindering and preventing Portland police officers from maintaining access to the clinic. Thus, the record confirms our determination that the complaint engaged consideration of a "hindrance" clause theory.
 
 IV
 
 29
 Our analysis of the viability of the plaintiff's theories of Sec. 1985(3) liability leaves us with a situation in which one of the theories submitted to the jury was legally defective. "As a general rule, 'a general jury verdict will be upheld only if there is substantial evidence to support each and every theory of liability submitted to the jury.' " Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 777 (9th Cir.1990) (quoting Syufy Enters v. American Multicinema, Inc., 793 F.2d 990, 1001 (9th Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 830, and cert. denied, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 838 (1987)). An exception to this rule exists, however, when we are able to construe a general verdict as attributable to a theory submitted to the jury that was viable, in this case the "hindrance" clause theory. In deciding whether to exercise this discretion, the factors we consider are: "(1) the potential for confusion of the jury; (2) whether the losing party's defenses apply to the count upon which the verdict is being sustained; (3) the strength of the evidence supporting the count relied upon to sustain the verdict; and (4) the extent to which the same disputed issues of fact apply to the various legal theories." Id. (citing Traver v. Meshriy, 627 F.2d 934, 938-39 (9th Cir.1980)).
 
 
 30
 On consideration of these factors, we find that this is not a case in which to exercise this discretion. To quote Operation Rescue, "There is a significant distinction between the clauses. The deprivation clause concerns conspiracies of some private persons to commit tortious actions against other private persons.... The hindrance clause, on the other hand, concerns conspiracies to thwart state law enforcement from protecting against such tortious activity." 8 F.3d at 685. The two theories rely on proof of materially different facts, and it appears the evidence that would support a hindrance theory is not strong. Moreover, there is nothing in the record indicating the basis for the jury's verdict. Accordingly, the general rule applies, and we conclude as a matter of law that the general verdict returned in this case is patently invalid.
 
 
 31
 Because the general verdict on plaintiff's theory is invalid, PFWHC is not entitled to attorneys' fees and costs under 42 U.S.C. Sec. 1988. We therefore vacate the district court's award of attorneys' fees and costs under 42 U.S.C. Sec. 1988.
 
 V
 
 32
 Defendants were also found liable under the Oregon RICO statute, Or.Rev.Stat. Sec. 166.715-.735 (1993). The Oregon RICO claims are not before us on appeal.
 
 
 33
 Appellants contend that because Bray held the first clause of Sec. 1985(3) did not provide a federal cause of action against anti-abortion activists seeking to block health clinics which perform abortions, the District Court lacked subject-matter jurisdiction over the state claims in this case. As did the Supreme Court in Bray, we hold that while PFWHC's Sec. 1985(3) claim fails, it was not, prior to the Court's holding in Bray, " 'wholly insubstantial and frivolous'... so to deprive the District Court of jurisdiction." Id. at ----, 113 S.Ct. at 768 (quoting Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Moreover, we have now held that plaintiffs did adequately allege a Sec. 1985(3) violation under the second clause of that statute.
 
 CONCLUSION
 
 34
 The judgment of the district court is reversed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs of this appeal.