56 F.3d 73
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Romaner J. STRONG, Jr., Plaintiff-Appellant,
v.
JUDICIAL REVIEW MONTEREY PENINSULA, Monterey Peninsula
College; Monterey Peninsula College, Defendants-Appellees.
 No. 93-16126.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 16, 1995.
Decided June 1, 1995.
 
 Before: REINHARDT, THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Romaner J. Strong, Jr. brought an action in district court alleging that Monterey Peninsula College (the College) violated his civil rights and discriminated against him on the basis of race in the process of hiring its Instructor of Administration of Justice. His civil rights claims, asserted under 42 U.S.C. Secs. 1981, 1983, 1985 and 1988, were dismissed on statute of limitations grounds. After a jury trial on Strong's employment discrimination claim, asserted under 42 U.S.C. Sec. 2000-e et seq., judgment was entered in favor of the College. Strong appeals pro se, alleging a variety of errors at the district court level. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 3
 Strong is an African-American attorney with ten years legal experience, a graduate of UCLA Law School, a member of the Texas and District of Columbia bars, and a former Assistant Attorney General for the State of Texas. He does not possess a degree in Administration of Justice.
 
 
 4
 Between 1987 and 1989, Strong was employed as a part-time instructor of Administration of Justice at Monterey Peninsula College. In 1989, the College advertised that it was seeking a coordinator for its Administration of Justice program. Although the job announcement called for a degree in Administration of Justice, Strong applied for the position.
 
 
 5
 The College designated a six-person committee ("selection committee") to review applications and interview selected candidates. After reviewing several applications, including Strong's, the selection committee decided to relax the job requirements in order to expand the applicant pool. The new criteria encouraged applications from persons who did not possess degrees in Administration of Justice but had degrees in related fields and were otherwise well qualified. Eleven additional applications were submitted as a result of the change.
 
 
 6
 The selection committee ranked Strong 36th out of 49 total applicants. Because the committee decided to interview only the top 17 candidates, Strong was not granted an interview. On July 31, 1989, Strong received notice that he had not been selected for the job. The person hired was a male Caucasian.
 
 
 7
 After exhausting his administrative remedies as required for Title VII claims, Strong, proceeding in propria persona, filed a complaint against the College in district court. The complaint, filed April 26, 1991, alleged employment discrimination, in violation of 42 U.S.C. Sec. 2000-e et seq., and civil rights violations, under 42 U.S.C, Secs. 1981, 1983, 1985, 1986 and 1988. At the district court level, Strong contended that the original job announcement, which called for a degree in Administration of Justice, was drawn up in a way which discouraged minority applicants. He further contended that his application was scored before the second job announcement was distributed and therefore he was not given the benefit of the relaxed degree requirement.[1]
 
 
 8
 The district court granted the College's motion to dismiss Strong's civil rights claims because the applicable statutes of limitations had expired. Cross-motions for summary judgment with respect to the employment discrimination claim were denied. After a six-day trial before a jury, judgment was entered in favor of the College. The College was awarded $2,777 in costs. Strong's motion for a new trial was denied. This appeal followed.
 
 DISCUSSION
 A. Appealability
 
 9
 As a preliminary matter, the College argues that 22 of Strong's 24 issues on appeal were not included in his notice of appeal, as required by Federal Rule of Appellate Procedure 3(c), and therefore should not be considered by this court.[2]
 
 
 10
 Federal Rule of Appellate Procedure 3(c) states in part that the "notice of appeal ... must designate the judgment, order, or part thereof appealed from." The College contends that Strong's designation puts at issue only the denial of his motion for a new trial and denial of his motion for review of the College's costs bill. Therefore, the College argues, these are the only two issues properly before this court, and the remaining 22 should be dismissed.
 
 
 11
 "While some circuits construe Rule 3(c) strictly ... this circuit has held that a mistake in designating the judgment appealed from should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1481 (9th Cir. 1986) (quotations and citations omitted), aff'd, 488 U.S. 347 (1989). See also Stone v. Godbehere, 894 F.2d 1131, 1133 n.1 (9th Cir. 1990). "In determining whether 'intent' and 'prejudice' are present, we apply a two-part test: first, whether the affected party had notice of the issue on appeal; and, second, whether the affected party had an opportunity to fully brief the issue." Lynn, 804 F.2d at 1481. When the appellant raises in his opening brief an issue omitted from his notice of appeal, and the appellee files a brief responding to that issue, we have found that failure to comply with Rule 3(c) does not warrant dismissal. Id. See also Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 691 (9th Cir. 1993), cert. denied, 114 S. Ct. 924 (1994); Casella v. Webb, 883 F.2d 805, 807 n.2 (9th Cir. 1989); Meehan v. County of Los Angeles, 856 F.2d 102, 105 (9th Cir. 1988).
 
 
 12
 Here, all 24 issues were raised in Strong's opening brief, and the College responded to each of them in its brief. Additionally, each issue was listed in Strong's Notice of Transcript Portions to be Ordered. The College had notice of all the issues and was not prejudiced by Strong's failure to comply with Rule 3(c). Therefore, we have considered all the issues Strong raises on appeal.
 
 
 13
 B. Denial of Motion for Leave to Amend Complaint
 
 
 14
 Strong argues the district court erred in denying him leave to amend his complaint to include additional defendants.[3]
 
 
 15
 The district court has broad discretion to grant or deny a party's motion to amend his complaint. The denial of leave to amend after a responsive pleading has been filed is reviewed for abuse of discretion. National Abortions Federation v. Operation Rescue, 8 F.3d 680, 681 (9th Cir. 1993). Such a denial, however, is "strictly" reviewed in light of the strong policy permitting amendment. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991).
 
 
 16
 In general, leave to amend should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied if amendment of the complaint would be futile. Albrecht v. Lund, 845 F.2d 193, 195, as amended by 856 F.2d 111 (9th Cir. 1988). Amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton Inc., 845 F.2d 209, 214 (9th Cir. 1988).
 
 
 17
 The district court found amendment of Strong's complaint would be futile for two reasons. First, his Title VII claim against the proposed defendants was barred because those individuals were not named in the charge previously filed with the EEOC. Second, each of his civil rights claims was barred by the applicable statute of limitations. These rulings were correct.
 
 
 18
 First, Title VII claimants may not sue individuals not named in the EEOC charge unless it can be inferred from the charge that the unnamed parties violated Title VII, and those parties should have anticipated they would be sued. Sosa v. Hiraoka, 920 F.2d 1451, 1458-59 (9th Cir. 1990); Stache v. Int'l Union of Bricklayers, 852 F.2d 1231, 1234 (9th Cir. 1988), cert. denied, 493 U.S. 815 (1989); 42 U.S.C. Sec. 2000-e(5)(f)(1). Because Strong has not included his EEOC charge as part of the record, there is no way to determine whether the defendants he sought to add, none of whom was named in the charge, properly could be sued.
 
 
 19
 Second, each of Strong's civil rights claims was governed by a one-year statute of limitations. Burnett v. Grattan, 468 U.S. 42, 48, n.12 (1984) (Sec. 1986); McDougal v. County of Imperial, 942 F.2d 668, 673-74 (9th Cir. 1991) (Sec. 1985(3)); Elliot v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994) (Sec. 1983); Taylor v. Regents of University of California, 993 F.2d 710, 711 (9th Cir, 1993) (Secs. 1981, 1983, 1985).[4] Strong's civil rights claims accrued on July 31, 1994 when he received notice from the College that he was not selected as Coordinator for the Administration of Justice program. See Clive v. Brusett, 661 F.2d 108, 110 (9th Cir. 1981) (cause of action accrues when party knows or should have known of injury which is basis for claim). His original complaint was not filed until April 26, 1991, eight months after the statute of limitations period had expired. Therefore, Strong's civil rights claims were time-barred.
 
 C. Denial of Motion for Summary Judgment
 
 20
 Strong next argues the district court erred in denying his motion for summary judgment. A grant or denial of summary judgment is a question of law which we review de novo. Daring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986). "Viewing the evidence in the light most favorable to the nonmoving party, [the appellate court] must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).
 
 
 21
 Strong points to nothing in the record which indicates he satisfied his burden of proving that the evidence, when viewed in the light most favorable to the College, established the College had discriminated against him on the basis of race. Instead, he makes a litany of accusations involving misconduct by the College and its attorneys which are not substantiated by any citations to the record. He does not explain how or why this alleged misconduct is relevant to the district court's denial of his summary judgment motion.
 
 
 22
 The district court authored a well-reasoned opinion finding there were genuine issues of material fact regarding whether the members of the selection committee knew Strong was an African-American; whether the College's decision to change the job requirements during the course of the hiring process was motivated by racial animus or by a legitimate, nondiscriminatory reason; and whether the College's facially neutral selection criteria had a disparate impact on minority applicants. This ruling was correct.
 
 D. Propriety of Jury Instructions
 
 23
 The district court instructed the jury that, in order to recover on his discrimination claim, Strong had to prove that: (1) he is a member of a protected class; (2) he applied for and was qualified for the position; (3) he was not hired; (4) the position was kept open or given to a less qualified person; and (4) he sustained damages as a result. Strong argues these instructions were erroneous. He also contends references in the instructions to "the position" were vague and ambiguous because more than one job announcement was at issue, and the jury could have found him qualified under one but not the other.
 
 
 24
 Federal Rule of Civil Procedure 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." This court interprets Rule 51 strictly. Glover v. Bic Corp., 987 F.2d 1410, 1418 (9th Cir. 1993). In civil cases, we will not reverse a jury verdict because of improper jury instructions in the absence of a proper objection, even if the instructions given were plain error. Id.
 
 
 25
 Strong filed written objections to the district court's proposed jury instructions. These objections did not include a claim that the term "the position" was vague and ambiguous. We therefore decline to consider that question.
 
 
 26
 In his written objections, Strong requested that the phrase "or given to a less qualified person" be deleted from the instructions because "[t]he complete sentence is vague and ambiguous as to whether it is up to the jury to decide which of the two phrases should be applied or whether plaintiff may prove either of the said essential elements." Strong also complained in his written objections that the jury instructions failed to mention the shifting burdens of proof applicable in employment discrimination cases--specifically, the defendant's burden of articulating, after the plaintiff states a prime facie case of employment discrimination, a legitimate nondiscriminatory reason for its employment decision. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Hagans v. Clark, 752 F.2d 477, 481 (9th Cir. 1985). We find no merit to these contentions.
 
 
 27
 Under McDonnell-Douglas, a plaintiff alleging employment discrimination must prove that the position for which he applied remained open or was given to a member of an unprotected class. Id. at 802. The person hired need not be less qualified than the plaintiff. Thus, Strong correctly notes that the jury instructions misstated the McDonnell-Douglas test. However, the instructions of which Strong complains could not have affected the result, because Strong did not make the cut for interviews, and the instructional errors he points to spoke only to who was finally selected for the job.
 
 
 28
 The trial judge has substantial latitude in tailoring jury instructions. United States v. Beltran-Rios, 878 F.2d 1208, 1214 (9th Cir. 1989). The jury need not be "confuse[d] ... with legal definitions of the burdens of proof, persuasion and production and how they shift under McDonnell-Douglas." In re Lewis, 845 F.2d 624, 634 (6th Cir. 1988). It is sufficient that the jury is instructed on the plaintiff's burden of proving that a discriminatory reason more likely than not was responsible for the defendant's employment decision. See Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1344-45 (9th Cir. 1987).[5] In the present case, the district court instructed the jury that:
 
 
 29
 Plaintiff has the burden of proving by a preponderance of the evidence that defendant had a racially discriminatory purpose or motive in refusing to hire him....
 
 
 30
 Plaintiff must prove that it is more likely than not that his race was a reason that defendant refused to hire him.
 
 
 31
 Record of Trial at 669. The question central to Strong's claim was whether the failure to include him in the group that was selected for oral interviews and consequently the failure to hire him was motivated by a racially discriminatory reason. The instruction directly and sufficiently addressed that question.
 
 E. Other Issues
 
 32
 We have thoroughly reviewed the remainder of Strong's claims and find them all without merit. We also deny the College's request for an award of costs and attorney fees.
 
 
 33
 AFFIRMED.
 
 REINHARDT, Circuit Judge, concurring:
 
 34
 I fully concur in the majority's disposition. I write separately simply to express my view that the employment of the McDonnell-Douglas burden shifting framework in jury instructions is inappropriate. In United States Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983), the Court explained that when an employment discrimination case is fully tried on the merits "McDonnell-Burdine presumption drops from the case, and the factual inquiry proceeds to a new level of specificity." Id. at 715 (internal quotations and citations omitted). In my view, the Court meant what it said. I construe Aikens to mean that after a full trial, the McDonnell-Douglas test drops out completely, and accordingly, it should not be used as a format for jury instructions. As the Court noted:
 
 
 35
 All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult. ... But none of this means that [courts] should treat discrimination differently from other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern the allocation of burdens and order of presentation in deciding this ultimate question.
 
 
 36
 Aikens, 460 U.S. at 715 (emphasis added). Even more so, of course, when the trier-of-fact is a jury.
 
 
 37
 Once all of the evidence has been presented, the jury's attention should be directed to the ultimate question at issue; the jurors should not be distracted by the intricacies of McDonnell-Douglas, which continue to confound even learned judges.
 
 
 38
 In any event, I agree with the majority that any error with respect to the giving of the McDonnell-Douglas form of instruction was in this case harmless. Both the plaintiff and the defendant urged that it be given, and the disagreement is only over a point that, as the majority points out, does not affect the basic issue the jury was required to decide. Further, as the majority also notes, the jury was given the proper instruction applicable to that issue, and the erroneous instruction was in all likelihood superfluous.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In his appellate brief, Strong states he was more qualified under the criteria of the first job announcement than the person who was ultimately hired. He contends that, because the second job announcement specifically called for a police science credential, it was less favorable to him. This contention appears to be not only contrary to the record, but the opposite of what Strong argued to the district court
 
 
 [2]
 The College also urges that Strong's appeal be dismissed because his brief does not comply with Ninth Circuit Rules. We decline to dismiss Strong's appeal on this basis
 
 
 [3]
 The proposed defendants were the City of Monterey; the City of Seaside; David W. Hopkins, the Superintendent/President of the College; Anne Cobb, Director of Human Resources and Affirmative Action at the College; and the six members of the College's selection committee
 
 
 [4]
 This limitations period was not, as Strong contends, equitably tolled during the period Strong was exhausting his administrative remedies with the EEOC as a prerequisite to bringing his Title VII claim. See Johnson v. Railway Express Agency, 421 U.S. 454, 462-67 (1975). Strong's civil rights claims against the proposed defendants are separate and distinct from the claim he pursued in his Title VII action against the College. See Fobbs v. Holy Cross Health System, Inc., 29 F.3d 1439, 1445 (9th Cir. 1994)
 
 
 [5]
 In Cassino, we found the following jury instructions adequate:
 To recover for discrimination in conditions or terms of employment the plaintiff must prove by a preponderance of the evidence that:
 
 
 [1]
 He belongs to a protected group
 
 
 [2]
 He was the subject of [race] discrimination
 * * *
 
 
 [3]
 Defendant intentionally discriminated against Plaintiff because of his [race, and]
 
 
 [4]
 [A]s a direct result of such [race] discrimination, Plaintiff sustained damages
 Cassino v. Reichhold Chemicals, 817 F.2d at 1344.